**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ICC EVALUATION SERVICE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL ASSOCIATION OF PLUMBING AND MECHANICAL OFFICIALS, INC., *et al.*, <br><br> Defendants. | Case No.: 1-16-cv-00054 (EGS) <br><br> **ORAL ARGUMENT REQUESTED** |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Defendants International Association of Plumbing and Mechanical Officials, Inc. and

IAPMO Evaluation Service, LLC's (together, "IAPMO") copyright infringement is obvious from

even a cursory comparison of ICC Evaluation Service, LLC's ("ES") copyrighted works and

IAPMO's subsequent documents.  IAPMO lifts ES's language wholesale, without permission.

Unable to refute these allegations, IAPMO misrepresents the law and facts at issue.  The

following are the two grossest misrepresentations:

- *Misrepresentation*:   IAPMO asserts that this action constitutes anti-competitive conduct.  IAPMO is incorrect.  The market for construction product evaluation services is robustly competitive.  Moreover, there is nothing anti-competitive about ES's decision to defend its intellectual property.  IAPMO is not entitled to steal ES's copyrighted works without consequences.  IAPMO's blatant infringement must stop.

- *Misrepresentation*:   IAPMO asserts that, because ES did not identify in its complaint the specific "portions" of the copyrighted Works infringed by IAPMO, ES purportedly failed to state a claim for copyright infringement.  But there is no heightened pleading requirement for copyright infringement claims.  IAPMO's "portions" requirement does not exist.  IAPMO has not cited any case that supports its argument.  In fact, the one case on which IAPMO would hang its hat holds the opposite.

ES properly alleged that IAPMO knowingly and willfully infringed ES's copyrighted works—and not just once.  Over and over again.  Furthermore, ES has stated cognizable state law claims that IAPMO tortiously interfered with ES's contracts and prospective business relationships and breached its contract with ES.  This Court should deny IAPMO's motion to dismiss.

## I.      STANDARD OF REVIEW

IAPMO's entire motion to dismiss is based on a fundamental misunderstanding of the distinction between what a party is required to allege to state a claim and what a party must eventually prove at trial.  Rather than attack the allegations of the Amended Complaint, IAPMO focuses on arguments that ES failed to produce evidence sufficient to prevail on the merits.  *See, e.g.,* Dkt. 15-1 at 6 (describing what "a plaintiff must prove" to establish a copyright infringement claim); *id.* (addressing requirements "[t]o prevail on a copyright infringement claim" instead of the requirements to state a claim); *id.* at 6–7 (identifying what a plaintiff "must show" "[t]o prevail on a copyright infringement claim," instead of what a plaintiff must allege to state a claim);  *id.* at 18 (arguing for dismissal because ES "cannot demonstrate" proximate cause); *id.* (seeking dismissal because ES allegedly "cannot establish" but-for causation).

Of course, at this early stage, ES "need only set forth 'a short and plain statement of the claim,' FED. R. CIV. P. 8(a)(2), giving the defendant fair notice of the claim and the grounds upon which it rests."  *Kingman Park Civic Assoc. v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  *See also Lilley v. Stout*, 384 F. Supp. 2d 83, 89 (D.D.C. 2005) (denying motion to dismiss where complaint "though lacking in detail, alleges sufficient facts to make out a *prima facie* case" for copyright infringement).  ES's Complaint

"should not be dismissed for failure to state a claim unless it appears beyond doubt that [ES] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Kingman Park Civic Assoc.*, 348 F.3d at 1040 (citation omitted).  "A court considering [a motion to dismiss] presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor." *Gill v. D.C.*, 872 F. Supp. 2d 30, 33 (D.D.C. 2012) (citation omitted).  Further, "the Court must grant plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged." *Prunte v. Universal Music Grp.,* 484 F. Supp. 2d 32, 37 (D.D.C. 2007) (citation omitted).

"[I]n deciding a Rule 12(b)(6) motion, a court may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or 'documents upon which the plaintiff's complaint necessarily relies. . . .'" *Mead v. Lindlaw*, 839 F. Supp. 2d 66, 70 (D.D.C. 2012) (citations omitted).  *See also Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) ("[A] court may consider on a motion to dismiss . . . 'documents attached as exhibits or incorporated by reference in the complaint . . . .'" (citations omitted)).

A complaint should be dismissed with prejudice only if it is clear that any amendment would be futile.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.") (reversing dismissal with prejudice and remanding); *Brown v. Stroud*, No. C 08-02348 JSW, 2011 WL 2600661, at *2 (N.D. Cal. June 30, 2011) ("If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.") (granting leave to amend).

## II.    ARGUMENT

ES sufficiently has alleged claims for copyright infringement, breach of contract, and tortious interference with contract and prospective business relationships.  Additionally, ES's state law claims require "extra elements" beyond those elements at issue in an action for copyright infringement and thus are not preempted by the Copyright Act.  This Court should deny IAPMO's motion to dismiss.

### A.    ES Stated A Claim For Copyright Infringement

In order to state a claim for copyright infringement, ES need only set forth a short and plain statement of its claim.  FED. R. CIV. P. 8(a).  ES has done so.

At the motion to dismiss stage, ES is not required "[t]o establish copyright infringement," as IAPMO suggests.  Dkt. 15-1 at 6.  Nor is ES required to "prove" or "show . . . that the defendant actually copied the plaintiff's work" or to "show . . . that defendant's work is 'substantially similar' to protectable elements of the plaintiff's work."  *Id.*  To the contrary, "[t]he requirement of a short and plain statement of the claim set out in Federal Rule 8(a) applies to actions for copyright" infringement.  Wright & Miller, 5 FED. PRAC. & PROC. § 1237 (3d ed. 2015).  In this litigation, ES will demonstrate both that IAPMO actually copied ES's Works and that IAPMO's works are substantially similar—in large part, identical—to the protectable elements of ES's Works, but it is not required to establish those elements at the outset of the litigation and in advance of discovery.  Because ES's Complaint satisfies the notice pleading standard of Rule 8(a), it is more than sufficient.

Moreover, it strains credulity for IAPMO to argue that it does not have adequate notice of what it is alleged to have illegally copied.  As demonstrated below, even a cursory review of the

specified ES copyrighted Works and the corresponding infringing IAPMO documents reveals rampant copying of original content.  Consequently, although not required by the Federal Rules of Civil Procedure, ES clearly and easily could amend its complaint to set forth comparisons between each ES copyrighted Work and the corresponding infringing IAPMO document.

The following four example comparisons are excerpted from ES's copyrighted Works and the corresponding infringing IAPMO document.[1]  Although these excerpts are only a small portion of the language IAPMO copied from each of ES's Works, these short excerpts clearly illustrate IAPMO's substantial copying.  The text highlighted in red indicates identical text, and the text highlighted in yellow indicates synonymous text that has the same meaning or identical text that has been moved around.  The examples bleed red.

Example 1:  Comparison of ES's AC 86 (2008) with IAPMO's EC 004-2010

As ES alleges, "[o]n March 1, 2008, ES approved and published ES Acceptance Criteria No. 86 for testing and evaluating the structural performance of Cold-Formed Steel Framing Members—Interior, Nonload-Bearing Wall Assemblies for compliance with several codes including 2006 versions of both the International Building and International Residential Codes." Dkt. 13 ¶ 95.  ES registered its copyright in Acceptance Criteria 86.  *Id.* at ¶ 96.  However, "[w]ithout ES's authorization or license, Defendants have knowingly and willfully copied substantial portions of ES Acceptance Criteria No. 86 and are or have been publishing and distributing it on the Internet as 'IAPMO-ES Evaluation Criteria 004-2010.'"  *Id.* at ¶ 97.

---

[1]    The Court may consider these excerpts because the Amended Complaint references and necessarily relies upon them.  *Mead*, 839 F. Supp. 2d at 70; *Ward*, 768 F. Supp. 2d at 119.



Example 2:  Comparison of ES's ESR-2017 with IAPMO's ER-2017

Likewise, as ES alleges, "ES registered with the Copyright Office its copyright in ES Evaluation Report No. ESR-2017."  Dkt. 13 ¶ 63.  Yet, "[w]ithout ES's authorization or license, Defendants have knowingly and willfully copied substantial portions of ESR-2017 and are or have been publishing and distributing it on the Internet as 'IAPMO Evaluation Report No. 2017' . . . ."  *Id.* at ¶64.



Example 3: Comparison of ES's ESR-2448 with IAPMO's ER-400

As set forth in the Complaint, "[o]n May 1, 2013, ES published ES Evaluation Report No. ESR-2448," and "[e]ffective July 15, 2015, ES registered with the Copyright Office its copyright" in that report. Dkt. 13 ¶¶ 68–69. Yet, "[w]ithout ES's authorization or license, Defendants have knowingly and willfully copied substantial portions of ES Evaluation Report No. ESR-2448 and are or have been publishing and distributing it on the Internet as 'UES Evaluation Report No. 400,' . . . ." *Id.* at ¶ 70.



Example 4:  Comparison of ES's ESR-3246 to IAPMO's ER-353

As ES alleges, "[o]n September 1, 2013, ES published ES Evaluation Report No. ESR-3246" and, "[e]ffective July 15, 2015, ES registered with the Copyright Office its copyright" in that report.  Dkt. 13 ¶¶ 80–81.  As ES further alleges, and as illustrated in Example 1, "[w]ithout ES's authorization or license, Defendants have knowingly and willfully copied substantial portions of ES Evaluation Report No. ESR-3246 and are or have been publishing and distributing it on the Internet as 'UES Evaluation Report No. 353,' . . . ."  *Id.* at ¶ 82.



This Court should deny IAPMO's motion to dismiss.

    *1.    ES Sufficiently Pled Its Claim For Copyright Infringement*

    Under this Court's precedent, ES sufficiently has alleged "(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright." *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (citation omitted). *See also Warren v. John Wiley & Sons, Inc.,* 952 F. Supp. 2d 610, 616 (S.D.N.Y. 2013) ("A properly plead[ed] copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant

infringed the copyright." (citation omitted)); *Kindergartners Count, Inc. v. Demoulin,* 171 F.

Supp. 2d 1183, 1190 (D. Kan. 2001) ("The plaintiff's second amended complaint alleges

ownership of the copyright, proper registration of the copyright, and the defendants'

infringement of the copyright. It states sufficient facts as to provide defendants with fair notice of

the copyright claim and as to enable them to draft a responsive pleading."); Wright & Miller, 5

FED. PRAC. & PROC. CIV. § 1237 ("Complaints simply alleging present ownership by the

plaintiff, registration in compliance with the applicable statute, and infringement by the

defendant, have been held sufficient under the rules.").

ES specifically identifies seventeen original Works by their title and properly registered

copyright registration number.  Dkt. 13 ¶¶ 25, 51, 54, 57, 60, 63, 66, 69, 72, 75, 78, 81, 84, 87,

90, 93, 96, 99; Dkt. 13-4–13-20.  For example, ES alleges that "[o]n November 1, 2009, ES

published Evaluation Report No. ESR-1215 (valid from November 1, 2009 to November 1,

2009), assessing Eldorado Stone, Eldorado Brick, and Eldorado Adobe Veneers and Eldorado

Accents, for compliance with the 2006 versions of both the International Building and

International Residential Codes," and that "[e]ffective November 19, 2015, ES registered with

the Copyright Office its copyright in ES Evaluation Report No. ESR-1215, under the copyright

registration number TX 8-121-232."  Dkt. 13 ¶¶ 50–51.  And ES alleges that IAPMO

"knowingly and willfully copied substantial portions of ES Evaluation Report No. ESR-1215,

and are or have been publishing and distributing it on the Internet as 'UES Evaluation Report

No. 337,' . . . ."  *Id.* at ¶ 52.  Thus, because the Complaint "identifies the works at issue," states

that ES "owns" the registered copyrights, and "generally states how and when infringement

occurred," IAPMO's motion to dismiss should be denied.  *Jetform Corp. v. Unisys Corp.*, 11 F.

Supp. 2d 788, 790 (E.D. Va. 1998) (denying motion to dismiss copyright infringement action).

10

2.       *IAPMO Has Invented A Heightened Pleading Standard Purportedly Requiring ES To Allege The Specific "Portions" Of The Copyrighted Works At Issue*

IAPMO does not contend that ES failed to identify "which specific works form the subject of the copyright claim." *Newborn,* 391 F. Supp. 2d at 186. IAPMO also does not challenge ES's allegations that it owns copyrights in those identified works. *Id.* Nor does IAPMO contend that ES failed to register its copyrights in accordance with the Copyright Act. *Id.* Further, IAPMO does not contend that ES failed to allege the relevant time in which IAPMO infringed ES's copyrights. *Id.*

Rather, IAPMO contends that ES purportedly "failed to plead that Defendants have engaged in unlawful, actionable copying," or copying reflecting substantial similarity, because ES did not identify the specific "portions" of the infringed Works "at issue." Dkt. 15-1 at 7. This Court has held that actionable copying, or "[s]ubstantial similarity is a question that should be decided either by a factfinder at trial or, in some cases, in the context of a motion for summary judgment, *not on a motion to dismiss* for failure to state a claim under Rule 12(b)(6)." *Prunte v. Universal Music Grp.,* 484 F. Supp. 2d 32, 41 (D.D.C. 2007) (emphasis added) (denying motion to dismiss).

There is no requirement that ES allege "what portions, if any, of the subject works are protected by copyright . . . ." Dkt. 15-1 at 8. ES "need not specify which individual elements within the work are protected." 6 PATRY ON COPYRIGHT § 19:5 (citations omitted). *See also Facebook, Inc. v. Power Ventures, Inc.,* No. C 08-5780 JF (RS), 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) ("Facebook need not allege the exact content that Defendants are suspected of copying at this stage of the proceedings. There is no requirement that copyright claims must be pled with particularity.") (denying motion to dismiss copyright infringement claim); *Pfeffer v.*

*Empire Stat, Inc.*, No. 03 CIV.1404 LTS FM, 2006 WL 3096027, at *3 (S.D.N.Y. Nov. 1, 2006)

(rejecting argument that plaintiff was required to allege "what, if anything, [was] specifically

original" in the copyrighted work) (denying motion to dismiss copyright infringement claim);

*LTM Int'l, Inc. v. Brown*, No. 04-61716-CIV, 2005 WL 1279043, at *1 (S.D. Fla. Apr. 15, 2005)

("[A] plaintiff is not required to assert exactly which individual elements of the copyrighted

works were infringed . . . ." (citations omitted)) (denying motion to dismiss); *Krasselt v. Joseph*

*E. Seagram & Sons, Inc.*, No. 01 CV 2821 (RCC), 2002 WL 1997926, at *2 (S.D.N.Y. Aug. 29,

2002) ("At this stage of litigation, Plaintiff is not required to specify exactly which individual

elements of the Proposals are original in order to put Defendants on fair notice of the claims

against them . . . .") (denying motion to dismiss).  ES is only required to identify the "specific

original works" at issue, and it has done so.  Defendants have not cited *any case* supporting their

assertion that, absent such allegations, ES's complaint it subject to dismissal.

The sole case cited by IAPMO as purportedly supporting the non-existent "portion"

requirement expressly states that a plaintiff need only allege "which specific original works form

the subject of the copyright claim." *Newborn*, 391 F. Supp. 2d at 186.[2]  The *Newborn* court did

not indicate, let alone hold, that a plaintiff must identify the specific language or portions of an

---

[2]      IAPMO errs in relying on *Newborn* to argue for dismissal.  *Newborn* addressed contributory copyright infringement—a claim not at issue here—and is completely distinguishable on its facts.  In *Newborn*, the plaintiff's complaint was deemed insufficient because the plaintiff failed to identify the infringed works in his complaint, instead "direct[ing] the defendants and this Court to various letters he sent to the defendants, which the plaintiff posit[ed] clearly identif[ied] the referenced material." *Newborn*, 391 F. Supp. 2d at 188.  In contrast, ES specifically identifies the infringed copyrighted Works in its Amended Complaint.  Dkt. 13 ¶¶ 25, 50–100; Dkt. 13-4–13-20.  Furthermore, the *Newborn* complaint was dismissed because it was "riddled with vague, confusing and contradictory statements," 391 F. Supp. 2d at 187; ES's allegations are straightforward and consistent.  Dkt. 13 ¶¶ 25, 50–106.  And the *Newborn* complaint failed to allege that any purportedly infringed work had "received a copyright registration number from the United States Copyright Office." *Newborn*, 391 F. Supp. 2d at 188.  ES identified each registration number in its allegations and appended a copy of each copyright registration to its Complaint.  Dkt. 13 ¶¶ 25, 51, 54, 57, 60, 63, 66, 69, 72, 75, 78, 81, 84, 87, 90, 93, 96, 99; Dkt. 13-4–13-20.

infringed work at issue in its complaint.  The complaint must simply allege "what materials have

allegedly been infringed," and the ES complaint does so.  *Newborn*, 391 at 187.

        3.      *Copyright Infringement Claims Are Not Subject To Heightened Pleading Standards*

"There is no heightened pleading standard for copyright infringement."  *CoStar Realty*

*Info., Inc. v. Field*, 612 F. Supp. 2d 660, 674 (D. Md. 2009) (citations omitted).  *See also Mid*

*Am. Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993) ("We cannot accept the argument that

plaintiffs in" compilation copyright cases "must be held to a particularity requirement akin to

Federal Rule of Civil Procedure 9(b).") (reversing dismissal of the copyright infringement claim

and remanding); *McDonald v. K-2 Indus., Inc.*, 108 F. Supp. 3d 135, 139 (W.D.N.Y. 2015)

("[T]here is no heightened pleading requirement applied to copyright infringement claims; a

claim of copyright infringement need only meet the pleading requirements of Rule 8 of the

Federal Rules of Civil Procedure.") (citation omitted); *Arista Records LLC v. Greubel,* 453 F.

Supp. 2d 961, 965 (N.D. Tex. 2006) ("The court declines to adopt Greubel's test to the extent it

would impose a heightened pleading standard in cases of alleged copyright infringement.")

(citing, *inter alia*, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512–3 (2002)); *Warren v. John*

*Wiley & Sons, Inc.,* 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013) ("To require a plaintiff to do

more, at the motion to dismiss stage, would be to subject copyright plaintiffs to a heightened

level of pleading, something this Court has been strictly proscribed from doing.") (citation

omitted)).

        IAPMO wrongly contends that ES was required to identify "what portions" of the

copyright Works were infringed or to elaborate upon "how, or in what manner, Defendants

copied, modified or otherwise used the Evaluation Reports or Acceptance Criteria."  Dkt. 15-1 at

8. Any such requirement would constitute a prohibited heightened pleading standard. Again, at the motion to dismiss stage, ES need only satisfy Rule 8's notice pleading requirement; it is not required to prove its case at the pleading stage. IAPMO's assertion that, because the appended copyright registration certificates state that the copyrighted material excludes prior versions of the copyrighted reports and certain third party text, "it is incumbent on Plaintiff to identify what portions, if any," of the protected Works "are protected by copyright" is entirely off-base. *Id.* at 7–8.

The Copyright Office requires that copyrights in previously published material (*i.e.* a prior version of a copyrighted report) be excluded from the registration of the copyright in a subsequent version. U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 621.1, available at http://copyright.gov/comp3/ ("For purposes of registration, unclaimable material includes . . . [p]reviously published materials"). However, registration of the copyright in the subsequent version is sufficient to support claims for infringement of the copyrights in the prior version, provided that the same entity owns both copyrights. *See Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 Fed. Appx. 259, 268–69 (5th Cir. 2014) (holding, consistent with "at least five circuits" and district courts in two other circuits, that a claimant's "registration of the derivative works [wa]s sufficient to allow an infringement claim based on copying of the material, either newly added or contained in the underlying work.") (citation omitted)); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1143–44 (10th Cir. 2009) ("[I]f the same party owns a copyright in both a derivative work . . . and the underlying work that is incorporated in the derivative work, registration of a copyright in the derivative work is sufficient to permit an infringement action on either the preexisting (unoriginal) material or on any newly contributed material.") (citation omitted)); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746–47 (2d

Cir. 1998) (where the claimant "is the owner of the copyright of both the derivative and preexisting work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work.").  Additionally, because ICC was not the author of "certain third party text" included in the relevant works, that third party text obviously had to be excluded from ICC's copyright registrations.  U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 621.1, available at http://copyright.gov/comp3/ ("For purposes of registration, unclaimable material includes . . . [c]opyrightable material that is owned by a third party."). Federal Rule of Civil Procedure 8(a) does not require the specific identification of such excluded material in a copyright infringement complaint, and IAPMO does not even purport to cite a single case holding otherwise.  ES's complaint is sufficiently alleged.

"Neither the Federal rules nor case law support [IAPMO's] heightened pleading argument.  Since [ES] has set out a short and plain statement of copyright infringement, [IAPMO's] motion to dismiss for failure to state a cause of action for copyright infringement" should be denied.  *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.,* No. 8:08-CV-1227-T-30EAJ, 2009 WL 963130, at *2 (M.D. Fla. Apr. 8, 2009) (denying motion to dismiss copyright infringement claim).

**B.**     **ES's State Law Claims For Breach of Contract, Tortious Interference with Contract, and Tortious Interference With Prospective Business Relationships Are Well Pled And Are Not Preempted By The Copyright Act**

ES has stated claims for breach of contract, tortious interference with contract, and tortious interference with prospective business relationships.  None of these state law claims are preempted by the Copyright Act.[3]

Section 301(a) governs the Copyright Act's preemption of state law claims.  It provides:

> all legal or equitable rights that are *equivalent* to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression *and come within the subject matter of copyright as specified by sections 102 and 103* . . . are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (emphases added).

Accordingly, "[p]reemption under the Copyright Act has both subject matter and equivalency requirements; to be preempted, state law must not only relate to the type of work protected by copyright law, but it must be equivalent to any of the exclusive rights protected by the Copyright Act."  *Assoc. of Am. Med. Colleges v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 22 (D.D.C. 2004).  In the D.C. Circuit, a state law cause of action survives preemption if it satisfies the "extra element" test.  *Id.*  A state law claim "must qualitatively require at least one element in addition to those needed to make out a Copyright Act claim."  *Int'l Kitchen Exhaust*

---

[3]     Courts may decline to dispose of tortious interference claims on preemption grounds at the pleading stage because preemption analysis is "highly dependent upon the facts presented and the claims actually pled by the parties."  *Kendall Holdings, LTD. v. Eden Cryogenics, LLC*, No. 2:08-CV-390, 2010 WL 3894166, at *8 (S.D. Ohio Sept. 29, 2010) (holding tortious interference claim "not amenable to disposition on a preemption challenge at the pleading stage.").  *See also Xpel Techs. Corp. v. Am. Filter Film Distributors*, No. CIVA SA-08-CA175-XR, 2008 WL 3540345, at *8 (W.D. Tex. Aug. 11, 2008) (denying motion to dismiss tortious interference claims which were "not yet sufficiently explicated to enable the Court to rule on whether they are preempted.").

*Cleaning Assoc. v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 73 (D.D.C. 2000) (applying the "extra element" test).  "To determine whether a state law claim is qualitatively different from a copyright claim—that is, whether the state claim has an 'extra element'—courts generally examine both the elements of the state law cause of action and the way the plaintiff has actually pled that cause of action."  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1304 (D.C. Cir. 2002).  Each of ES's state law causes of action satisfies the "extra element" test and thus survives preemption.

> 1.   *ES Stated A Claim For Breach Of Contract That Is Not Preempted By The Copyright Act*

ES has stated a claim for breach of contract by alleging that IAPMO was bound by and breached the Website User Agreement.  Dkt. 13 ¶¶ 43–49, 107–115.  IAPMO's assertion that ES's browsewrap agreement fails to form a contract is quite odd considering that, as alleged in the Amended Complaint at paragraph 44, IAPMO itself relies on a browsewrap agreement to set forth the terms of use for its own website.  *Id.* at ¶ 44; Exh. A, Screenshot of IAPMO's Website. Additionally, courts frequently hold that breach of contract claims are not preempted by the Copyright Act.  This Court should deny IAPMO's motion to dismiss.

> a.   ES stated a claim for breach of contract

In order to successfully state a claim for breach of contract, ES was required to allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by the breach."  The complaint includes each required allegation.  *Paulin v. George Washington Univ. Sch. of Med. & Health Scis.*, 878 F. Supp. 2d 241, 246 (D.D.C. 2012) (citations omitted).  IAPMO does not contend that ES failed to allege "an obligation or duty arising out" of the Website Use Agreement.  *See* Dkt. 15-1 at 15–17.  Nor

does IAPMO contend that ES failed to allege "a breach of that duty" or "damages caused by the breach." *Id.* IAPMO's only basis for arguing that ES failed to state a claim for breach of contract is its assertion that the "Amended Complaint fails to allege a valid contract between the parties." *Id.* at 15. That contention is incorrect. IAPMO wrongly asserts that "there is no allegation that Defendants ever actually agreed or assented to the Website User Agreement." To the contrary, ES alleges that IAPMO "affirmatively accepted the Website User Agreement . . . ." Dkt. 13 ¶ 111. This Court must accept that allegation as true when ruling on a motion to dismiss. *See Gill*, 872 F. Supp. 2d at 33.

ES's Website User Agreement is a type of contract commonly referred to as a browsewrap agreement. Although the D.C. Circuit has not addressed the enforceability of browsewrap agreements, courts consistently enforce browsewrap agreements where the party who accessed the website had actual or constructive knowledge of the contract. *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007) (party with "actual knowledge" bound to browsewrap terms); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401 (2d Cir. 2004) (party who continually used site and received notice of terms upon each use was bound by browsewrap agreement); *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV997654HLHVBKX, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003) ("[A] contract can be formed by proceeding into the interior web pages after knowledge (or, in some cases, presumptive knowledge) of the conditions accepted when doing so.") (citations omitted)). Not only are parties with actual knowledge that "continued to use" the site bound by the contract, *Sw. Airlines Co.*, 2007 WL 4823761, at *7, but courts also have held that "repeated and automated use of . . . web pages can form the basis of imputing knowledge" of the website's terms of use sufficient to "effectively bind" the user to the browsewrap contract. *Cairo, Inc. v.*

18

*Crossmedia Servs., Inc.,* No. C 04-04825 JW, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005)

(party who continually used website bound by terms "even accepting Cairo's allegation that it

did not explicitly agree to CMS's Terms of Use . . . ."). Further, in appropriate circumstances, a

browsewrap license agreement may be "valid and enforceable" even where a party lacked

knowledge and was "not immediately confronted with the notice" of the contract's terms. *See*

*Pollstar v. Gigmania, Ltd.,* 170 F. Supp. 2d 974, 982 (E.D. Cal. 2000).[4]

Following this persuasive authority, the Website User Agreement constitutes a "valid

contract between the parties." *Paulin,* 878 F. Supp. 2d at 246 (citations omitted). As ES alleges,

"[u]se of ES's website and access to and use of content on it is governed by and subject to the

Website User Agreement," which is provided by a link on "each webpage of ES's website."

Dkt. 13 ¶¶ 108–109. ES alleges that IAPMO was "on notice and/or had actual knowledge of the

Website User Agreement and affirmatively accepted the Website User Agreement by their

continuous and regular use of ES's website . . . ." *Id.* at ¶ 111. ES expressly alleges that IAPMO

was on notice of and had actual knowledge of the Website User Agreement and, by accessing the

website "on hundreds of occasions" bound itself to the browsewrap agreement. *Id.* at ¶ 110.

Furthermore, like ES, IAPMO itself employs a browsewrap agreement, entitled "Website Terms

of Use." Exh. A, Screenshot of IAPMO's Website; Exh. B, IAPMO Website Terms of Use.

Thus, ES states a claim for breach of contract.

---

[4]   IAPMO's reliance on *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1177 (9th Cir. 2014), is misplaced. *Nguyen* recognizes that "courts have consistently enforced browsewrap agreements where the user had actual notice of the agreement" and that, without actual knowledge, "the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id.* at 1176–77. Likewise, in *Hines v. Overstock.com, Inc.,* 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), the court recognized that "[i]n ruling upon the validity of a browsewrap agreement, courts consider primarily 'whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site.'" ES expressly alleges that IAPMO had actual knowledge and notice of the agreement, which is sufficient to preclude IAPMO's motion to dismiss. Dkt. 13 ¶¶ 108–111.

   b.  <u>ES's breach of contract claim is not preempted</u>

  "It is well-established that state law breach of contract claims are not preempted by the Copyright Act." *Pollstar v. Gigmania, LTD.,* No. CIV-F-00-5671RECSMS, 2000 WL 34016436, at *18 (E.D. Cal. Sept. 1, 2000) (citations omitted) (claim for breach of website user agreement not preempted).  For example, the Federal Circuit has held that a breach of contract claim regarding breach of a shrink-wrap agreement was not preempted.  *Bowers v. Baystate Techs., Inc.,* 320 F.3d 1317, 1324 (Fed. Cir. 2003) ("[M]ost courts to examine this issue have found that the Copyright Act does not preempt contractual constraints on copyrighted articles."). *See also Benay v. Warner Bros. Entm't,* 607 F.3d 620, 629 (9th Cir. 2010) ("Contract claims for the protection of ideas are not preempted by copyright law if they allege an 'extra element.'"); *Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1089 (9th Cir. 2005) ("Most courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights."); *Nat'l Car Rental Sys., Inc. v. Computer Associates Int'l, Inc.,* 991 F.2d 426, 430–31 (8th Cir. 1993) ("The question then becomes whether CA's allegation that National breached their contract by using the program in a fashion not allowed under the contract protects a right equivalent to one of the exclusive copyright rights.  We believe it does not."); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) ("Plaintiff's claim for breach of contract entails a distinct cause of action which is clearly not within the subject matter of copyright but arises out of the implicit contractual provisions of the design agreement.") (reversing and remanding); *HotSamba, Inc. v. Caterpillar Inc*., No. 01 C 5540, 2004 WL 609797, at *5 (N.D. Ill. Mar. 25, 2004) (breach of contract claim not preempted where contract provided rights "both more expansive . . . and more restrictive" than the rights specified in the Copyright Act).

In the oft-cited case *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), the Seventh Circuit explained why a claim asserting the breach of a shrink-wrap agreement would not be precluded by the Copyright Act. "Rights 'equivalent to any of the exclusive rights within the general scope of copyright' are rights established *by law*—rights that restrict the options of persons who are strangers to the author." *Id.* at 1454. In contrast, contracts "generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" *Id.* As the Seventh Circuit held, "a simple two-party contract is not 'equivalent to any of the exclusive rights within the general scope of copyright' and therefore may be enforced." *Id.* at 1455 (reversing and remanding).

ES's breach of contract claim is not preempted because the Website User Agreement is a contract between two parties—IAPMO and ES—and "claims involving two-party contracts are not preempted because contracts do not create exclusive rights, but rather affect only their parties." *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.,* 596 F.3d 1313, 1326 (11th Cir. 2010). The existence of a valid agreement between two parties "constitutes an 'extra element.'" *Id.* at 1327.

Furthermore, ES alleges that IAPMO violated contractual agreements that are outside of the exclusive rights protected by Section 106 of the Copyright Act; thus, ES's breach of contract claim contains "extra elements" that preclude preemption. Pursuant to the express terms of the Website User Agreement, IAPMO was not permitted to "remove any copyright, trademark or other intellectual property or proprietary notice or legend contained on the Site or the Site Information" and was required to "retain all copyright, trademark, service mark and other proprietary notices contained on the Site or in the original Site Information on any authorized copy" of the "Site or the Site Information." Dkt. 13 ¶ 45. However, as ES alleges, IAPMO

21

"failed to preserve ES's copyright notice on" the reports that it copied.  *Id.* at ¶ 112.  This contractual right regarding the maintenance of ES's copyright or trademark notice on its materials is outside of the exclusive rights afforded by Section 106 of the Copyright Act. Because ES's Website User Agreement gives it "additional rights", "the breach of contract claim is not preempted by the Federal Copyright Act and the motion to dismiss the breach of contract claim must be denied."  *Frontline Test Equip., Inc. v. Greenleaf Software, Inc.,* 10 F. Supp. 2d 583, 593 (W.D. Va. 1998).

      2.     *ES Stated A Claim For Tortious Interference With Contract That Is Not Preempted By The Copyright Act*

ES stated a claim for tortious interference with contract, and that claim is not preempted by the Copyright Act.  This Court should deny IAPMO's motion to dismiss.

      a.     <u>ES stated a claim for tortious interference with contract</u>

Under D.C. law, ES has stated a claim for tortious interference with contract by alleging the "(1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach."  *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.,* 565 A.2d 285, 289 (D.C. 1989) (citations omitted).  *See also Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 288 (D.C. 1977) ("In order to recover for inducement of breach of contract, four things must be proven: (1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." (citation omitted)).  Specifically, ES alleges the "existence of a contract" by alleging that ES's "customers request the development of ES Evaluation Reports by completing an ES Evaluation Report Application," which "constitutes the contract between ES and a customer that applies for an ES Evaluation

Report." Dkt. 13 ¶¶ 31–32. ES alleges IAPMO's "knowledge of the contract." *Id.* at ¶¶ 41, 42,

119, 120. And ES alleges IAPMO's "intentional procurement" of contractual breach and

resulting damage. *Id.* at ¶¶ 41, 42, 119, 120. IAPMO is simply incorrect in asserting that ES

"fails to identify any of the elements required to set forth a *prima facie* tort." Dkt. 15-1 at 18.

To the contrary, ES's allegations track the elements of tortious interference with contract

precisely.

IAPMO errantly asserts that ES must "plead and make a 'strong showing of intent' to

disrupt an ongoing business relationship" in order to plead tortious interference with contract.

*Id.* at 17. Tortious interference with business relationships is an entirely separate tort. *See Bell*

*v. Ivory*, 966 F. Supp. 23, 30–31 (D.D.C. 1997) (separately dismissing tortious interference with

contract claim and tortious interference with business relationships claim on different grounds).

IAPMO's citations to *Bell*, 966 F. Supp. 23, and *Benedict v. Allen*, No. 00-1923, 2001 U.S. Dist.

LEXIS 26293 (D.D.C. 2001), address only tortious interference with prospective business

advantage, and are therefore inapposite. *See* Dkt. 15-1 at 17.

In any case, ES has alleged "affirmative, intentional acts of interference" with its

contracts. *Nanko Shipping, USA v. Alcoa, Inc*., 107 F. Supp. 3d 174, 183 (D.D.C.) (citations

omitted). ES alleges that IAPMO "intentionally induced and/or caused ES's customers" and

"will continue intentionally to induce and/or cause ES's customers" to breach their contracts

with ES by "(a) providing ES's Evaluation Reports to Defendants to be copied and used by them,

and/or (b) permitting reproduction of significant parts of ES Evaluation Reports in Defendants'

evaluation reports, and/or (c) permitting Defendants to 'misrepresent' authorship of ES's

proprietary and copyrighted material, and/or (d) failing to obtain advance approval from ES

when there was a question about the use of an ES Evaluation Report." Dkt. 13 ¶¶ 119, 120.

Consequently, ES's tortious interference claim does not "rest[] on alleged inaction." *Nanko Shipping, USA*, 107 F. Supp. 3d at 183. To the contrary, ES expressly alleges that IAPMO acted "intentionally" to "induce[] and/or cause[]" ES's customers to breach their contracts. Dkt. 13 ¶ 119, 120.

IAPMO does not cite any support for its contention that ES was required to "identify . . . specific client[s]" that were "allegedly induced." Dkt. 15-1 at 18. To the contrary, ES's allegations would "satisfy federal pleading requirements" if ES had "alleged interference but ha[d] not specifically identified existing parties" to its contracts. *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004). Regardless, ES has identified thirteen specific customers by including detailed allegations as to thirteen Evaluation Reports that IAPMO copied and used in violation of ES's contracts with those customers. Dkt. 13 ¶¶ 25, 31–42, 116–122; Dkt. 13-1, 13-2. As ES alleges, IAPMO caused ES's customers to breach their contracts with ES when those customers "permitted [IAPMO's] reproduction of significant parts of" their ES Evaluation Reports and "permitted Defendants to 'misrepresent' authorship" of those reports. Dkt. 13 ¶¶ 119, 120.

IAPMO argues that ES "cannot demonstrate that any conduct on the part of Defendants proximately caused its alleged injury" and "cannot establish 'but for' causation for its alleged damages" because the ES Evaluation Reports are posted on ES's website. Dkt. 15-1 at 18. As an initial matter, ES is not required to "demonstrate" or "establish" anything at the pleading stage. It is only required to allege the elements for tortious interference with contract,[5] which it

---

[5] IAPMO cites no case supporting its assertion that ES must "demonstrate" proximate causation for tortious interference with contract in its Amended Complaint. Neither of the cases it cites addresses tortious interference with contract. In *Steele v. Isikoff*, 130 F. Supp. 2d 23, 34 (D.D.C. 2000), the court dismissed a claim for *fraud and negligent misrepresentation* because the plaintiff's "own depiction of the facts" alleged that the defendant was not the proximate cause of her alleged harm. And in *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.*, 820 F. Supp.

has done, as demonstrated above.  In addition, it is irrelevant to ES's claim that the ES

Evaluation Reports are "posted on ICC-ES' website."  *Id.*  As ES alleges, its contract with its

customers acknowledges that "[t]he then-current evaluation report" is "available on the ICC-ES

web site," and then sets forth the ways in which ES's customers may (and may not) use those

reports and permit the use of those reports by third parties.  Dkt. 13 ¶ 35.  The public availability

of the reports has nothing to do with ES's allegations here.  ES has stated a claim for tortious

interference with contract, and IAPMO's motion to dismiss should be denied.

### b.   ES's tortious interference with contract claim is not preempted

IAPMO does not cite a single case holding that a tortious interference with contract claim

can ever be preempted by the Copyright Act, let alone demonstrate that ES's tortious

interference with contract claim is preempted.  "Generally speaking, the rights created by a claim

for inducing breach of contract are not equivalent to rights granted under the Copyright Act.

Rights created by contract do not create exclusive rights and thus a claim for inducing breach of

contract is normally not equivalent to the rights within the scope of the Copyright Act."  *Star*

*Patrol Enterprises, Inc. v. Saban Entm't, Inc.,* No. 95-56534, 129 F.3d 127, at *3 (9th Cir. Oct.

23, 1997) (reversal of dismissal on motion to dismiss).  *See also MDY Indus., LLC v. Blizzard*

*Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010) ("We conclude that since Blizzard seeks to

enforce contractual rights that are not equivalent to any of its exclusive rights of copyright, the

Copyright Act does not preempt its tortious interference claim.");  *Silicon Image, Inc. v. Analogix*

*Semiconductor, Inc.*, No. C-07-0635 JCS, 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007)

(tortious interference claim not preempted where contract breach stemmed from "use" of the

copyrighted material in violation of the contract, rather than reproduction);  *Telecom Tech. Servs.*

---

2d 62, 75 (D.D.C. 2011), the court denied the motion to dismiss claims for *equitable relief* because the plaintiff had
"adequately alleged the existence of proximate cause."

*Inc. v. Rolm Co.,* 388 F.3d 820, 833 (11th Cir. 2004) (tortious interference claim not preempted; plaintiff was required to demonstrate breach of contractual terms regarding the licensure to third parties, which constituted an "additional element"); *Cassway v. Chelsea Historic Properties I,* Civ. A. No. 92-4124, 1993 WL 64633, at *5 (E.D. Pa. Mar. 4, 1993) (holding that "because the tortious interference claim relates to a contractual matter different than Cassway's exclusive right to use the architectural plans to prepare derivative works, such claim will not be preempted.").

As said above, tortious interference with contract requires ES to allege (and later prove) "intentional procurement" of contractual breach.  ES alleged "intentional procurement" by alleging that IAPMO induced ES's customers to breach their contracts.  Dkt. 13 ¶¶ 119, 120. This "alleged inducement . . . constitutes an 'additional element' that differs in kind from those necessary for the alleged infringement of [ES's] underlying copyright."  *Do It Best Corp. v. Passport Software, Inc*., No. 01 C 7674, 2004 WL 1660814, at *19 (N.D. Ill. July 23, 2004) (tortious interference with contract claim not preempted).

The D.C. Circuit has held that a tortious interference with contract claim is not preempted "where the defendant interferes with the plaintiff's contractual rights through conduct *other* than 'reproduction[,] . . . preparation[,] . . . distribution[,] . . . performance[,] . . . or display' of the copyrighted work."  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (citing 17 U.S.C. § 106).  ES alleges "just such a case."  *Id.*  ES alleges that IAPMO induced ES's customers to breach their contracts with ES by "permitting Defendants to 'misrepresent' authorship of ES's proprietary and copyrighted material . . . ."  Dkt. 13 ¶¶ 119, 120.  ES also alleges that IAPMO induced ES's customers to breach their contracts with ES by "failing to obtain advance approval from ES when there was a question about the use of an ES Evaluation Report."  *Id.*  Each of these allegations addresses the breach of contractual rights through

conduct other than the "'reproduction[,] . . . preparation[,] . . . distribution[,] . . . performance[,] . . . or display' of the copyrighted work." *Sturdza*, 281 F.3d at 1305.

Furthermore, the D.C. Circuit reasoned that, even if a plaintiff includes allegations as to copyright infringement in its tortious interference claim, as long as the plaintiff "could proceed on [its] tortious interference with contract claim based on [its] other allegations," the "claim differs qualitatively" from a copyright infringement claim and "is not preempted." *Id.* Accordingly, under D.C. Circuit controlling precedent (which IAPMO failed to cite), ES's claim for tortious interference with contract is not preempted.

      *3.*     *ES Stated A Claim For Tortious Interference With Prospective Business Relationships That Is Not Preempted By The Copyright Act*

ES stated a claim for tortious interference with business prospective relationships, and that claim is not preempted by the Copyright Act. This Court should deny IAPMO's motion to dismiss.

      <u>a.</u>     <u>ES stated a claim for tortious interference with prospective business relationships</u>

ES stated a claim for intentional interference with prospective business relationships by alleging "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.,* 592 F. Supp. 2d 86, 98 (D.D.C. 2009) (citations omitted). ES alleges the existence of valid business relationships by alleging that it "has valid business expectancies in its relationships with its customers that use or will use ES Evaluation Reports and ES Acceptance Criteria." Dkt. 13 ¶ 124. Further, ES alleges that

IAPMO "knew about ES's business expectancies and nonetheless intentionally and willfully interfered" with those expectancies, and thereby "injured and/or caused the termination" of those expectancies. *Id.* at ¶ 126–27. Finally, ES alleges that it was "damaged" by IAPMO's tortious conduct. *Id.* at ¶ 128.

IAPMO incorrectly contends that ES was required to "identify . . . specific third-party or future potential customer[s]." Dkt. 15-1 at 20. As this Court has held in a published opinion, "notice pleading does not require the complaint to specify the entities with whom [ES] had an expectancy."[6] *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 45 (D.D.C. 2009) (citation omitted) (declining to dismiss tortious interference claim). In *Kimmel*, the defendant, much like IAPMO here, argued that the plaintiff had "failed to state a tortious interference claim because [the plaintiff had] not specifically identified a third party with whom [it] had an expectancy of a business relationship. . . ." *Id.* The court rejected that contention, and denied the motion to dismiss. *Id.*

---

[6]     In each case cited by IAPMO to argue that a plaintiff must identify a "specific third-party or future potential customer," Dkt. 15-1 at 20, the allegations were so vague and general that they failed to place the defendant on notice as to the prospective business expectancies at issue or failed to address future business prospects at all. For example, in the out-of-jurisdiction case *Kwang Dong Pharmaceutical Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002), the plaintiff merely relied on "[v]ague references to a promising future career. . . ." In *Nyambal v. Alliedbarton Security Services, LLC*, CV No. 14-01904 (EGS), 2016 WL 316778, at *5 (D.D.C. Jan. 26, 2016), the court dismissed because the plaintiff's only allegation with respect to future business expectancies was "a general reference to meetings with 'government officials.'" In the unpublished decision *Williams v. Federal National Mortgage Association, et al.*, CA No. 05-1483 (JDB), 2006 WL 1774252, at *8 (D.D.C. June 26, 2006), the court found insufficient allegations of "unspecified" prospective relationships with "various lenders and customers of Fannie Mae" and "Fannie Mae consultants, brokers, lenders and customers and their representatives." In *Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 53 (D.D.C. 2009), the court found insufficient "amorphous allegations" that "merely outline[d] three broad categories of relationships that may have been affected by the plaintiff's conduct" and because the plaintiff failed to allege intent. In *Xereas v. Heiss*, 933 F. Supp. 2d 1, 11 (D.D.C. 2013), the plaintiff's allegations "focuse[d] on his past positions and relationships," rather than setting forth allegations regarding "future employment prospect[s]." Likewise, in *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 34 (D.D.C. 1999), the plaintiff "failed to identify *any facts* demonstrating any future business relations or 'expectancies' that defendants affected." (emphasis added).
        In contrast, ES's allegations as to its "customers that use or will use ES Evaluation Reports and ES Acceptance Criteria" are straightforward and have placed IAPMO on notice as to the nature of ES's tortious interference with prospective business relationships claim. Dkt. 13 ¶ 124. In the event that this Court concludes that, subsequent to *Nyambal*, a plaintiff must identify specific entities with which it has prospective business relationships, ES respectfully requests leave to amend its complaint to so allege.

ES sufficiently alleges "the existence of a valid business relationship or expectancy" by alleging that it "has valid business expectancies in its relationships with its customers that use or will use ES Evaluation Reports and ES Acceptance Criteria." Dkt. 13 ¶ 124. ES identifies thirteen of those customers by including detailed allegations as to thirteen Evaluation Reports that IAPMO copied and used in violation of ES's contracts with those customers. *Id.* at ¶¶ 25, 31–42, 123–129; Dkt. 13-1, 13-2. It is certainly "commercially reasonable" for ES to expect future business relationships with customers who have already selected ES to author their Evaluation Reports. *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.,* 820 F. Supp. 2d 62, 77 (D.D.C. 2011) (declining to dismiss tortious interference claim). Particularly here, where the first ES Evaluation Report typically is the most costly to produce, and each report is valid only for a limited time period, *see* Dkt. 13 ¶¶ 50, 53, 56, 65, 68, 71, 74, 77, 80, 83, 86; Dkt. 13-1, 13-2, ES has valid prospective business expectancies with its current customers.

Furthermore, ES sufficiently alleged that IAPMO possessed the requisite tortious intent. ES alleges that IAPMO "intentionally and willfully interfered" with ES's prospective business relationships by offering products that it could not have produced "without the *unlawful* use of ES's works." Dkt. 13 ¶ 125 (emphasis added). As ES alleges, IAPMO has induced and will continue to induce ES's customers not to be candid with ES with respect to the unauthorized use of ES's Evaluation Reports. *Id.* at ¶¶ 119, 120. ES also alleges that IAPMO misrepresented ES's works as its own. *Id.* at ¶¶ 41, 123. Such unlawful conduct and misrepresentation sufficiently allege the requisite intent. *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 34 (D.D.C. 1999) (allegations as to unlawful conduct and "misrepresentation" sufficient (citation omitted)); *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C.

1988) (same).  ES has stated a claim for tortious interference with prospective business

relationships and this Court should deny the motion to dismiss.

> **b.**   ES's tortious interference with prospective business relationships claim is not preempted

Much as ES's tortious interference with contract claim is not preempted, ES's tortious

interference with prospective business relationships claim is not preempted.  To state a claim for

tortious interference with prospective business relationships, ES had to allege that IAPMO

intentionally interfered with ES's business relationships with its customers.  The "intentional

interference" element provides the "extra element" precluding preemption.  *See Sleppin v.

Thinkscan.com, LLC,* 55 F. Supp. 3d 366, 376 (E.D.N.Y. 2014) (discussing allegations of

intentional interference and holding that "because the Plaintiffs' tortious interference with

business relations claim does not rely solely on allegations of use and copying Thinkscan's work;

it is 'qualitatively different' than a Copyright . . . Act claim and is therefore not preempted.");

*AVKO Educ. Research Found. Inc. v. Wave 3 Learning Inc.,* No. 15-cv-3393, 2015 WL

6123547, at *6 (N.D. Ill. Oct. 15, 2015) ("Plaintiff's tortious interference with a prospective

business relationship claim has additional elements not covered by copyright law, and those

elements are not equivalent to the rights protected by copyright law.") (denying motion to

dismiss).

ES alleges that IAPMO has "intentionally and willfully interfered with ES's prospective

business relationships" by offering "similar evaluation reports or evaluation criteria more quickly

and for less money than they could have done without the unlawful use of ES's works," which

IAPMO could not have "produced at the speed or at the cost offered without the unlawful use of

ES's works."  Dkt. 13 ¶¶ 125–127.  The intentional interference alleged is the wrongful offering

of "similar evaluation reports or evaluation criteria more quickly and for less money"; thus, the wrongful offering of "similar evaluation reports or evaluation criteria more quickly and for less money" is the gravamen of ES's claim.  *Id.*  Accordingly, the relevant conduct differs from the 'reproduction[,] . . . preparation[,] . . . distribution[,] . . . performance[,] . . . or display' of the copyrighted work."  *Sturdza*, 281 F.3d at 1305.[7]  ES's intentional interference with prospective business relationships claim is not preempted by the Copyright Act.  This Court should deny IAPMO's motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint should be denied.  At a minimum, ES should be permitted to amend its complaint as necessary to conform with this Court's opinion.

---

[7]     IAPMO cites a non-precedential case from another court that is out of step with D.C. Circuit law on tortious interference, *see Sturdza*, 281 F.3d at 1305, and wrongly applies the "extra element" test.  In *Balsamo/Olson Grp., Inc. v. Bradley Place Limited Partnership*, 950 F. Supp. 896, 899 (C.D. Ill. 1997), the court wrongly concluded "[t]he fact that the Illinois claims contain[ed] an element of deception or misrepresentation [did] not effect [the] preemption analysis."  To the contrary, deception and misrepresentation are "extra elements" that prevent preemption.  *See, e.g.*, *Rubin v. Brooks/Cole Pub. Co.*, 836 F. Supp. 909, 923 (D. Mass. 1993) ("when . . . claims require proof of an extra element such as likelihood of consumer confusion, misrepresentation, or deception, the claims survive preemption.") (citations omitted)).  Therefore, precedent in the D.C. Circuit would dictate the opposite result.  *See Sturdza*, 281 F.3d at 1305.  Additionally, *Miller v. Holtzbrinck Publishers, L.L.C.*, 377 F. Appx. 72, 73 (2d Cir. 2010), is distinguishable because the Second Circuit "take[s] a restrictive view of what extra elements transform an otherwise equivalent [state law] claim into one that is qualitatively different from a copyright infringement claim," and the D.C. Circuit has not adopted such a restrictive view.  Additionally, whereas ES relies on the wrongful offering of "similar evaluation reports or evaluation criteria more quickly and for less money" as the relevant intentional interference, in *Miller* the plaintiff "rest[ed] on her theory" that her book was published without her authorization—*i.e.*, she merely alleged the elements of a copyright infringement claim.  *Id.* at 74 (citation omitted).  *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004), is similarly distinguishable.  The court held that the plaintiff had not alleged an extra element because the loss of business, or damages element, is "already protect[ed]" by copyright law.  *Id.*  Here, ES has alleged extra elements for each state law claim.

DATED:  March 31, 2016                    Respectfully submitted,


                                          /s/ J. Kevin Fee
                                          J. Kevin Fee (D.C. Bar No. 494016)
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          1111 Pennsylvania Avenue, NW
                                          Washington, DC 20004-2541
                                          (202) 739-3000
                                          (202) 739-3001 (Facsimile)
                                          jkfee@morganlewis.com

                                          -and-

                                          James Hamilton (D.C. Bar No. 108928)
                                          Raechel Keay Anglin (D.C. Bar No. 991999)
                                          Clara Kollm (D.C. Bar No. 1029841)
                                          Christopher Popecki (D.C. Bar No. 1026212)
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          2020 K Street NW
                                          Washington, DC  20006
                                          (202) 373-6000
                                          (202) 373-6001 (Facsimile)
                                          james.hamilton@morganlewis.com
                                          raechel.anglin@morganlewis.com
                                          clara.kollm@morganlewis.com
                                          christopher.popecki@morganlewis.com


                                          *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2016, the foregoing Opposition to Defendants' Motion to Dismiss was filed with the clerk of this Court via the CM/ECF system, which will notify all counsel of record including:

Pamela Anne Bresnahan
Elizabeth Treubert Simon
VORYS, SATER, SEYMOUR & PEASE LLP
1909 K Street, NW, 9th Floor
Washington, DC 20006
pabresnahan@vorys.com
etsimon@vorys.com

Peter Sam Selvin
Shena Rena Gold
TROYGOULD PC
1801 Century Park East, Suite 1600
Los Angeles, CA 90067
pselvin@troygould.com
sgold@troygould.com

DATED:  March 31, 2016                    */s/ J. Kevin Fee*
                                             J. Kevin Fee