**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ICC EVALUATION SERVICE, LLC, | |
| Plaintiff, | |
| INTERNATIONAL CODE COUNCIL, INC., | Civil Action No. 16-54 (EGS/DAR) |
| Plaintiff-Intervenor | |
| v. | |
| INTERNATIONAL ASSOCIATION OF PLUMBING AND MECHANICAL OFFICIALS, INC., et al, | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Plaintiff ICC Evaluation Service, LLC ("ICC-ES") brings this action against Defendants, the International Association of Plumbing and Mechanical Officials, Inc. ("IAPMO") and IAPMO Evaluation Service, LLC ("IAPMO-ES") for copyright infringement, in violation of 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"). Plaintiff-Intervenor International Code Council, Inc. ("ICC"), the parent company of ICC-ES, also seeks relief against the same Defendants. Pending for consideration by the undersigned United States Magistrate Judge is Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 77) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Also pending for consideration is Defendants' Motion to Dismiss Plaintiff-Intervenor's Amended Complaint (ECF No. 145) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Upon

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

consideration of the parties' written submissions, and the entire record herein, the undersigned recommends that both motions be denied.

## BACKGROUND[1]

Plaintiff ICC-ES develops and authors Evaluation Reports and Acceptance Criteria for compliance with building codes and regulations.  Third Amended Complaint (ECF No. 70) ("ICC-ES Complaint") ¶¶ 1-2, 6.  ICC-ES is a subsidiary of Plaintiff-Intervenor ICC.  *Id.* ¶ 7. ICC was formed in 2003 after several regional code organizations and their affiliates (the "Legacy Organizations") consolidated to create one model code organization.  *Id.* ¶ 8.  The Legacy Organizations authored two types of publications, "Evaluation Reports" and "Acceptance Criteria."  *Id.* ¶ 9.  Evaluation Reports assess "components, methods, and materials for compliance with building codes and regulations."  *Id.* ¶ 10.  Acceptance Criteria are used as the basis for issuance of future Evaluation Reports.  *Id.*  The Legacy Organizations regularly published these Acceptance Criteria and Evaluation Reports in monthly Serial Publications, which were regularly registered with the Copyright Office. *Id.* ¶ 37.

Defendant IAPMO also "develops model building codes, including the Uniform Plumbing Code and Uniform Mechanical Code."  *Id.* ¶¶ 11, 12.  Defendant IAPMO-ES is a subsidiary of IAPMO that "creates evaluation criteria, evaluates building products, and publishes Evaluation Reports."  *Id.* ¶¶ 13-14.  ICC and ICC-ES compete with IAPMO and IAPMO-ES in a national market for services that evaluate building products to assess their compliance with building codes and regulations.  *Compare id.* ¶¶ 1-2 *with id.* ¶¶ 11-14.

---

[1] The undersigned cites ICC-ES's Third Amended Complaint alone in this section for the sake of convenience. ICC's First Amended Complaint includes the same allegations related to the Legacy Works.

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

Plaintiffs allege that on or about January 31, 2003, the Legacy Organizations conveyed to ICC all rights, titles, and interests in, *inter alia*, "original works of authorship, copyrights," and "other intellectual property rights," including the Legacy Works Evaluation Reports and Acceptance Criteria at issue in the present motions.  *Id.* ¶¶ 34, 37-38, 62.  The Legacy Organizations and ICC allegedly intended that a separate non-profit, National Evaluation Services, Inc. ("NES"), would assume all the evaluation activities that the Legacy Organizations previously conducted.  *Id.* ¶¶ 38-43, 52-53.  Plaintiffs allege that, on or about January 31, 2003, ICC subsequently assigned all rights, titles, and interests in the Evaluation Reports and Acceptance Criteria, as well as the copyrights and copyright registrations, to NES.  *Id.* ¶ 35. NES's corporate name and structure has changed several times since 2003, most recently to ICC-ES.  *Id.* ¶¶ 36, 45-50.  On or about February 9, 2018, ICC allegedly executed a confirmatory assignment memorializing the 2003 donation and assignment of "all rights, titles, and interests, include the copyrights and copyright registrations" to ICC-ES, including the Evaluation Reports and Acceptance Criteria at issue here.  *Id.* ¶ 54; *see also id.*, Ex. 2 (ECF No. 70-2).

Plaintiffs allege that Defendants infringed and continue to infringe ICC-ES's Legacy Works copyrights in violation of the Copyright Act, 17 U.S.C. §§101, *et seq.  See, e.g.*, *id.* ¶ 81. ICC-ES seeks, *inter alia*, an injunction preventing further copyright violations, actual damages from the alleged infringement, and attorneys' fees and costs.  *See id.* at 34-35.  The Court previously denied a motion to dismiss ICC-ES's Copyright Act claim with respect to non-Legacy Works copyrights.  *See* Memorandum Opinion (ECF No. 31).

After Defendants moved to partially dismiss ICC-ES's Complaint, ICC sought to intervene so that, if this court found that the Assignment from ICC to ICC-ES was not valid, ICC could still pursue relief against Defendants.  *See* ICC's First Amended Complaint (ECF No. 138)

3

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

("ICC Complaint") ¶¶ 72, 124.  ICC seeks a declaratory judgment that ICC-ES owns the Legacy Works copyrights.  *Id.* at 28-29.  In the event this court finds that ICC-ES does not own the Legacy Works copyrights, ICC seeks the same relief as ICC-ES.  *Id.* at 29-30.

## APPLICABLE STANDARDS

### *Federal Rule of Civil Procedure 12(b)(6)*

A Rule 12(b)(6) motion to dismiss tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'"  *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation marks omitted).  In resolving a 12(b)(6) motion, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 63 (D.D.C. 2019) (quoting *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

As this court has previously held, "[t]here is no requirement that copyright claims must be pled with particularity." *See* Memorandum Opinion (ECF No. 31) at 8 (citing *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698, at *3-4 (N.D. Cal. May 11, 2009)). "At the pleading stage, a party alleging copyright infringement need only claim ownership over the copyrighted work, that the party has registered the work in accordance with statute, and that the defendant infringed." *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 (D.D.C. 2015).

### Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion to dismiss tests whether a court has subject matter jurisdiction over a case. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A party claiming subject matter jurisdiction bears the burden of demonstrating that federal laws and the Constitution allow a court to hear a case. *See Kokkonen*, 511 U.S. at 377. In evaluating a Rule 12(b)(1) motion "[a]t the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). A 12(b)(1) motion differs from a 12(b)(6) motion in two ways. First, unlike a 12(b)(6) motion, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question[.]" *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Second, "the court must scrutinize the plaintiff's allegations more closely" under Rule 12(b)(1) to assure itself that it has

5

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

the power to hear a case. *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). Because a court must assure itself that it has subject matter jurisdiction before deciding the merits of any case, a court must resolve a 12(b)(1) motion before resolving a 12(b)(6) motion. *See id.* at 64-65; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

## DISCUSSION

### *Defendants' 12(b)(1) Motions*

Defendants argue that this court lacks subject matter jurisdiction over ICC's Complaint because (1) ICC only alleges that ICC-ES owned and registered the Serial Publications, not the underlying Evaluation Reports and Acceptance Criteria, Defendants' Memorandum in Support of Its Motion to Dismiss Intervenor-Plaintiff ICC's Complaint ("Defendants' ICC Memorandum") (ECF No. 130-1) at 8-13, (2) ICC does not sufficiently plead that the underlying works were originally "made for hire" for the International Conference of Building Officials ("ICBO"), one of the Legacy Organizations which transferred copyrights to ICC, *id.* at 13-17, and (3) ICC does not plead that they have met the jurisdictional requirement of registering the relevant copyrights before suit, *id.* at 17-18. Defendants argue that this court lacks subject matter jurisdiction over ICC-ES's Complaint because ICC-ES has not sufficiently alleged that it owns the Legacy Works copyrights, by transfer or otherwise. *See* Memorandum of Points and Authorities in Support of Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint ("Defendants' ICC-ES Memorandum") (ECF No. 77-1) at 8-14.

The bulk of the challenges in both motions are not jurisdictional, but instead go to the merits of Plaintiffs' claims. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

for a dismissal for want of jurisdiction."); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 394 (D. Md. 2001) (holding that a Rule 12(b)(1) motion is inappropriate in patent case if arguments for dismissal are "intertwined with facts central to the merits of the dispute"). Whether ICC-ES owns the Legacy Works, whether the alleged transfers of copyright ownership took place, and whether the underlying works were "made for hire" are merits questions. Answering them will determine whether Plaintiffs have stated a proper claim under the Copyright Act but do not implicate this court's ability to hear the merits of the dispute. *See Bell*, 327 U.S. at 682. There are, however, three issues that could conceivably relate to subject matter jurisdiction.

First, Defendants argue that ICC and ICC-ES lack "standing." *See* Defendants' ICC-ES Memorandum at 8; Defendants' ICC Memorandum at 8. Yet Defendants fail to identify any element of Article III standing that Plaintiffs failed to satisfy. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (identifying the elements of Article III standing as injury, causation, and redressability). Nor do Defendants argue that this court should dismiss for reasons related to statutory or prudential standing. To the extent Defendants invoke standing as an issue, they do so to essentially argue that because Plaintiffs do not have a claim, this court does not have jurisdiction. *See* Defendants' ICC-ES Memorandum at 8. This is not a proper basis upon which to grant a 12(b)(1) motion. *See Bell*, 327 U.S. at 682.

Second, while Defendants do not appear to raise the issue here, Defendants, in a related action, sought and obtained dismissal of ICC's claim for a declaratory judgment because ICC's previous claim under the Declaratory Judgment Act did not present a case or controversy.[2] *See*

---

[2] The undersigned has a duty to ensure there is subject matter jurisdiction whether Defendants raise the argument or not. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (citation omitted) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").

Case 1:16-cv-00054-EGS-DAR   Document 174   Filed 11/22/19   Page 8 of 21

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

*International Code Council, Inc. v. Int'l Ass. of Plumbing and Mechanical Officials*, No. 18-cv-00756, ECF Nos. 26, 27.  This court found that because this Circuit has held that "[a] count for declaratory judgment is not cognizable as a separate cause of action[,]" ICC's inclusion of a count for declaratory judgment did not present an actual case or controversy.  *Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 38 (D.D.C. 2019).  In the Complaint filed in the present action, ICC seeks a declaration from this court as relief, not as an independent cause of action.  *See* ICC Complaint at 28-29.  The undersigned finds no jurisdictional problem with ICC seeking declaratory relief as a remedy.  *See Elec. Privacy Info. Ctr.*, 369 F. Supp. 3d at 38 (D.D.C. 2019) (holding that "such relief may be sought in [Plaintiff's] prayer for relief rather than as a separate claim").

Third, Defendants argue that ICC fails to meet a "jurisdictional requirement" under Section 411 of the Copyright Act, which requires that "copyrights must be registered." Defendants' ICC Memorandum at 17.  One could read this requirement as jurisdictional because it "is akin to an administrative exhaustion requirement" which, in other contexts, can implicate subject-matter jurisdiction.  *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) (holding that Federal Tort Claims Act exhaustion requirement is jurisdictional).  While "the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice[,]" it is less confusing when the Supreme Court has expressly considered the exact issue.  *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010).[3]  The "registration requirement is a

---

[3] The undersigned is disappointed that neither party thought to cite *Reed Elsevier* because it appears directly on point.  The undersigned is particularly disappointed that Defendants cite, without mentioning *Reed Elsevier*, a case that the Supreme Court expressly abrogated in *Reed Elsevier*.  *Compare* Defendants' ICC Memorandum at 10 (arguing that *Morris v. Business Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2001), supports a motion to dismiss for lack of jurisdiction) *with Reed Elsevier*, 559 U.S. at 159-60, 163 (citing to *Morris* and holding that the Second Circuit approach was in error).  The undersigned is aware that counsel cited *Morris* for a proposition concerning constituent work copyright ownership, but it did so in a motion to dismiss for lack of subject matter jurisdiction.

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction."
*Id.*  Thus, alleging a failure to register is not a proper basis for a 12(b)(1) motion to dismiss for
lack of subject-matter jurisdiction.

### Defendants' 12(b)(6) Motions

#### A.  Plaintiffs Sufficiently Plead that Transfers of Copyright Between ICC, ICC-ES, and the Legacy Organizations Gave Ownership to ICC-ES

In general, a copyright transfer is not valid unless it is in writing.  17 U.S.C. § 204(a).  The
only other way for a valid transfer to occur is "by operation of law . . . ."  *Id.*  To satisfy the
writing requirement, "an instrument of conveyance, or a note or memorandum of the transfer"
must be "signed by the owner of the rights conveyed or such owner's duly authorized agent."  *Id.*
Though the text of the Copyright Act is silent on the question, courts universally recognize that an
oral transfer may be valid if later ratified in writing.  *See Billy-Bob Teeth, Inc. v. Novelty, Inc*.,
329 F.3d 586, 591 (7th Cir. 2003); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d
1529, 1532 (11th Cir. 1994) (collecting cases).  These courts reason that the writing requirement
"is in the nature of a statute of frauds and is designed to resolve disputes among copyright owners
and transferees."  *Billy-Bob Teeth*, 329 F.3d at 592.  The writing requirement serves to "protect
copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright
ownership."  *Id.* (quoting *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96,
99 (11th Cir. 1995)).  As a result, giving effect to an oral agreement later ratified in writing still
provides the protections intended by the writing requirement because the transferor and transferee
agree that the original oral transfer was not "mistaken[] or fraudulent[]."  *See id.*

Defendants challenge ICC-ES's ownership of the Legacy Works copyrights because two
transfers did not effectively assign the Legacy Works from their original owner.  There are two

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

transfers at issue: the transfer of copyrights from the Legacy Organizations to ICC, and the

transfer from ICC to ICC-ES.  The undersigned considers each transfer in turn.

1.   **Plaintiffs Sufficiently Plead that ICBO Transferred All of its Copyrighted Works to ICC**

One Legacy Organization, ICBO, allegedly published and registered the five Evaluation

Reports and three Acceptance Criteria that are the subject of the instant motions to dismiss.  *See*

ICC-ES Complaint ¶¶ 31, 62.  Between 1977 and 2003, ICBO registered Serial Publications with

the Copyright Office.  *See, e.g.*, ICC-ES Complaint, Ex. 22 (ECF No. 70-22) (reflecting ICBO as

the author of a collective work made for hire, registered on November 29, 1999).  On January 31,

2003, ICBO allegedly conveyed to ICC all rights, titles, and interests in, *inter alia*, "original

works of authorship, copyrights," and "other intellectual property rights," including the Legacy

Works.  *See* ICC-ES Complaint, Ex. 1 (ECF No. 71-1) at 3; ICC-ES Complaint ¶¶ 37-38.

Defendants do not appear to dispute that ICBO transferred all of its copyrights to ICC.

Instead, Defendants challenge whether the Legacy Works were part of that transfer.  Defendants

argue that the Information Statement attached to ICC's Intervenor Complaint reflects that ICBO

Evaluation Service, Inc. ("ICBO-ES") actually created the Evaluation Reports and Acceptance

Criteria, not ICBO.  *See* Defendants' ICC Memorandum at 12-13; (citing ICC Complaint, Ex. 3

(ECF No. 138-3)).  Because ICBO only owned and registered the Serial Publications, Defendants

argue that ICBO did not and could not transfer the underlying Evaluation Reports and Acceptance

Criteria.  *See id.*

The undersigned, in the context of the issues presented in the motions considered herein,

finds that Plaintiffs sufficiently allege that ICBO transferred all of its copyrights after ICBO and

ICC memorialized a "Restricted Donation Agreement" on January 31, 2003.  *See* ICC-ES

Complaint, Ex. 1 (ECF No. 71-1); 17 U.S.C. § 204(a) (requiring that a transfer be in writing

signed by the transferor).  Whether ICBO could transfer the underlying Evaluation Reports and

Acceptance Criteria contained within the Serial Publications is a separate question explored later

in this Report and Recommendation.


### 2.    Plaintiffs Sufficiently Plead that ICBO Transferred All of its Copyrighted Works to ICC

Defendants argue that Plaintiffs do not sufficiently allege that ICC orally transferred any

copyrights to ICC-ES in 2003, notwithstanding a 2018 Confirmatory Assignment asserting as

such.  *See* Defendants' ICC-ES Memorandum at 9-14.  Defendants argue that because other

transfers in 2003 were reduced to writing, it is doubtful that an oral transfer took place.  *See id.* at

9-10.  Moreover, Defendants argue that Plaintiffs do not even allege that an oral transfer took

place.  *See id.* at 10-14.

Plaintiffs allege that the second transfer, from ICC to ICC-ES, occurred during and after

the meetings at which the Legacy Organizations consolidated.  *See* ICC-ES Complaint ¶¶ 31-55.

The Information Statement distributed by the Chairman of the ICBO Board ahead of those

meetings noted that board members would have to determine whether and how assets would be

transferred to new organizations.  *Id.* ¶ 42.  In the same Information Statement, the Chairman of

ICBO's Board explained that a new entity, ICC-ES, would "assume all of the evaluation activities

currently conducted by" the Legacy Organizations and that the Legacy Organizations would

"transfer all evaluation-related assets and contracts to ICC-ES."  ICC-ES Complaint, Ex. 3 (ECF.

No. 70-3) at 37-38.  On or about January 31, 2003, Plaintiffs allege that ICC transferred the

Legacy Works to NES, which subsequently became ICC-ES.  ICC-ES Complaint ¶¶ 40, 45-49.

On February 9, 2018, ICC allegedly memorialized a "Confirmatory Assignment" that the Legacy

Works were transferred to ICC-ES on January 31, 2003.  *See* ICC-ES Complaint, Ex. 2 (ECF No. 70-2).  Plaintiffs maintain that the transfer was operative in 2003, and that the Confirmatory Assignment in 2018 satisfies the requirement that a transfer be in writing.  *See* Plaintiff's Opposition to Defendants' Partial Motion to Dismiss Third Amended Complaint ("ICC-ES's Opposition") (ECF No. 83) at 14-16; 17 U.S.C. § 204(a).  Plaintiffs also argue that Defendants lack standing to challenge the assignment because, where a transferor and transferee are in agreement, it would be "unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement."  ICC-ES's Opposition at 21 (quoting *Billy-Bob Teeth*, 329 F.3d at 592-93 (citation omitted)).

Defendants are correct that Plaintiffs do not use the words "oral transfer" in their Complaints.  Instead, the Complaints allege that the transfer from ICC to ICC-ES occurred at board meetings in 2003.  ICC-ES Complaint ¶¶ 40-43.  Based on the Information Statement and subsequent reorganization of the Legacy Organizations, Plaintiffs clearly allege that the Legacy Organizations and ICC intended to assign the Legacy Works to ICC-ES.  It is a reasonable inference, for the purpose of consideration of the pending motions, that the Legacy Organizations board members in 2003 communicated verbally and orally transferred the Legacy Works to ICC-ES.  The allegation that the transfer occurred at or around the board meetings, coupled with an allegation of later ratification in writing, is therefore sufficient for Plaintiffs to plead that the transfer satisfied the writing requirement of 17 U.S.C. § 204(a); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1237 (3d ed. 2008) (noting that, in evaluating copyright transfers under a 12(b)(6) standard, "detailed pleading concerning how the plaintiff acquired ownership is not necessary").

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

Defendants, in any event, lack standing to challenge the confirmatory assignment.  No court in this Circuit appears to have addressed the issue, but the weight of authority supports the proposition that "where there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'"  *Billy-Bob Teeth*, 329 F.3d at 592-93 (quoting *Imperial Residential Design*, 70 F.3d at 99); *see also Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982).  Permitting a third party to challenge a confirmatory assignment is particularly "unusual and unwarranted" where, as here, "both the original owner and the transferee have joined as plaintiffs in the same lawsuit."  *Imperial Residential Design*, 70 F.3d at 99.  Based on the purpose of the writing requirement and the rationales of these courts, the undersigned concurs.

If, at the summary judgment stage, there is no material fact suggesting that an oral transfer took place, Defendants may renew their challenge.  *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 1002 (C.D. Cal. 2015) (finding, at summary judgment stage, that defendant could challenge where there is "no evidence a transfer occurred, whether by oral statement, by writing, or by conduct").  Plaintiffs need not introduce evidence at this stage because they met their burden of alleging an oral transfer took place.  If, at later stages of this case, Plaintiffs do not introduce material facts suggesting the existence of the oral transfer, Defendants may challenge the transfer.  If Plaintiffs do so, the court may determine that Defendants lack standing.

## B.  *Plaintiffs Sufficiently Plead that ICC-ES Owns the Constituent Works, and that the Constituent Works Were Properly Registered*

Having now determined that Plaintiffs plausibly allege that whatever belonged to ICBO was transferred to ICC-ES, the undersigned must now determine whether Plaintiffs plausibly allege that ICBO owned and registered the underlying works.  ICBO owned and registered collective works for Serial Publications.  The parties disagree as to the effect of the registration of the Serial Publications and whether Plaintiffs sufficiently allege that ICBO owned the underlying constituent works included within the Serial Publications.  At issue here are the second and third elements of a copyright infringement claim: "that the plaintiff owns the copyrights in those works" and "that the copyrights have been registered in accordance with the statute[.]"  *Newborn*, 391 F. Supp. 2d at 186.

### 1.  Plaintiffs Sufficiently Allege Registration of the Collective and Constituent Works

"A 'collective work' is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."  17 U.S.C. § 101.  The owner of a collective work "is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series."  17 U.S.C. § 201(c).  Because "[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole," the copyright of a constituent part of a collective work belongs to the author of the constituent part, not the owner of the collective work copyright.  *Id.*; *see also New York Times Co. v. Tasini*, 533 U.S. 483, 493-94 (2001).  If a collective work owner also owns the constituent works in such a scenario, collective work registration is "sufficient to permit an infringement action on behalf of component

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

works[.]"  *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 598 (4th Cir. 2013).

In a complaint alleging copyright infringement, a plaintiff must plead "that the copyrights have been registered in accordance with the statute."  *Newborn*, 391 F. Supp. 2d at 186.  This seemingly straightforward requirement can be ambiguous when applied to collective works.  *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc*., 722 F.3d 591, 597 (4th Cir. 2013). Section 409 of the Copyright Act requires that a registration contain, among other things, "the title of the work."  17 U.S.C. § 409(6).  Section 409 does not speak to whether the owner of a collective work who also owns the constituent works can simply list the title of the collective work to effectively register the constituent works.  *See Metro. Reg'l Info. Sys*., 722 F.3d at 597. Since 1980, the Copyright Office has recognized that, where the owner of a collective work also owns its constituent parts, the registration for the collective work effectively registers the constituent parts as well.  *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 679-80 (9th Cir. 2014); US Copyright Office, Compendium of U.S. Copyright Office Practices § 613.10(F) (3d ed. 2014) ("Compendium III") (encouraging, but not requiring applicants to list all contributors to a collective work).  Relying on its authority to issue "a single registration for a group of related works" elsewhere in the Copyright Act, the Copyright Office only requires information related to the collective work to register the underlying, constituent works if all belong to the same registrant.  17 U.S.C. § 408(c)(1); Compendium III § 613.10(F). Though no court within this Circuit appears to have considered the issue, all circuit courts that have considered the Copyright Office's practice have upheld it.  *See Alaska Stock*, 747 F.3d at 685; *Metro. Reg'l Info. Sys.*, 722 F.3d at 598-99.  *But see Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co*., 712 F. Supp. 2d 84, 94 (S.D.N.Y. 2010) (concluding that "§ 409 of the

Copyright Act mandates that the copyright registrations at issue here contain the names of all the authors of the work"); *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 71 (2d Cir. 2001) (holding that the owner of collective work cannot assert rights for copyrights of constituent parts if the collective work owner did not own the constituent parts), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

Defendants do not appear to challenge the Copyright Office's registration policy or case law affirming the policy.  Defendants point out, however, that in the cases where registration of a collective work effectively registers the constituent works, the party asserting ownership introduced evidence to support ownership of the constituent works.  *See* Defendants' Reply in Further Support of their Motion to Dismiss ICC's Complaint ("Defendants' ICC Reply") (ECF No. 152) at 6-14.  In other words, plaintiffs established ownership *and* registration in those cases, and because ownership is lacking here, Plaintiffs may not assert claims based on the constituent works.  *See id.*

The undersigned finds that Defendants correctly assert that ownership of constituent works is a necessary condition for the effective registration of those works.  *See Morris*, 259 F.3d at 71.  The undersigned also concurs with the weight of authority which holds that collective work registration can simultaneously register constituent works in the appropriate contexts.[4]  *See Alaska Stock*, 747 F.3d at 685; *Metro. Reg'l Info. Sys.*, 722 F.3d at 598-99.  Taking these principles in tandem in the context of this case, ownership determines whether the copyrights were properly registered.  Plaintiffs must therefore demonstrate that they own the underlying works to have

---

[4] Because the Compendium reflects guidance and practice, and is not a regulation, *Skidmore* deference is appropriate.  *Alaska Stock*, 747 F.3d at 685 (applying *Skidmore* deference).  Because the policy has been in effect since 1980, there is a strong reliance interest in upholding it.  *See id.* at 685-86.  It would also be "[absurd and] inefficient to require the registrant to list each author for an extremely large number of component works to which the registrant has acquired an exclusive license."  *Metro. Reg'l Info. Sys.*, 722 F.3d at 599 (quoting *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 976 (N.D. Cal. 2013)).

effectively registered them.  If Plaintiffs owned both the collective and constituent works,

Plaintiffs sufficiently allege that they registered both.

### 2.   Plaintiffs Sufficiently Allege Ownership of the Collective and Constituent Works

This court previously held that ICC sufficiently alleged ownership of certain copyrights

"by appending to its complaint the copyright registration for each work that was allegedly

copied."  Memorandum Opinion (ECF No. 31) at 9.  In their instant Complaints, Plaintiffs did not

attach registrations of the underlying Legacy Works.  They do, however, allege that ICBO and

ICBO-ES "regularly published Evaluation Reports and Acceptance Criteria in a Serial

Publication[.]"  ICC-ES Complaint ¶ 37.  ICBO allegedly registered the Serial Publications as

collective works "made for hire" with the Copyright Office.  *See, e.g.*, ICC-ES Complaint, Ex. 22

(ECF No. 70-22).  Plaintiffs also assert that the constituent works within the Serial Publications

are "ICBO Evaluation Reports and original Acceptance Criteria" which were "made for hire" by

ICBO-ES for ICBO, ICBO-ES' "single statutory member."  ICC-ES Complaint ¶ 62; *id*., Ex. 3

(ECF No. 70-3) at 20; ICC's Opposition at 7-10; *see also Cmty. for Creative Non-Violence v.*

*Reid*, 490 U.S. 730, 738-40 (1989) (holding that a work can be "made for hire" either by written

agreement or through an agency relationship).  Because both the collective and constituent works

belonged to ICBO, the 2003 Restricted Donation Agreement allegedly served to transfer both.

*See id.* ¶ 30.  Plaintiffs argue that this suffices to allege, at the pleading stage, that both the

collective works (the Serial Publications) and the constituent works (the Evaluation Reports and

Acceptance Criteria) were made for hire and owned by ICBO at the time of their initial

registration.  *See* ICC's Opposition at 9-10.

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

Defendants maintain that unlike in cases where registration of collective works sufficed to register constituent works, Plaintiffs have not introduced any evidence suggesting that ICBO, in fact, owned the constituent works.  Defendants' ICC Reply at 6-14.  In *Alaska Stock*, for example, the plaintiff attached, in opposition to a 12(b)(1) motion to dismiss, contracts reflecting ownership of constituent works.  *See id.* at 8; *see also* Plaintiff's Response to Defendant's Motion to Dismiss at 7, *Alaska Stock*, No. 3:09-CV-00061-TMB (D. Alaska June 24, 2009).  In seeking a preliminary injunction, plaintiffs in *Metropolitan Regional* attached sworn declarations describing the registration of the constituent parts and detailed the process by which owners of the constituent works assigned ownership to the plaintiff.  *See id.* at 9-10.  Defendants assert that this case is more like *Morris,* where the court held that the owner of a collective work cannot assert rights for copyrights of the constituent parts if the collective work owner does not own the copyrights for the constituent parts.  259 F.3d at 71.  Defendants further argue that while a registration is "prima facie evidence of the validity of the copyright and the facts stated in the certificate[,]" that evidentiary presumption does not apply here where the underlying works are not included or mentioned within the collective works copyrights.  Defendants' ICC Reply at 14-20; 17 U.S.C. § 410(c).

While there is no evidence to support ownership of the underlying Legacy Works in the registrations themselves, the relationship between ICBO and ICBO-ES creates a reasonable inference, for the purpose of the motions now under consideration, that the constituent works were made for hire.  In contrasting this case to *Alaska Stock* and *Metropolitan Regional*, Defendants overlook the difference in procedural posture here.  In *Alaska Stock*, the court properly relied on evidence outside the complaint to assure itself that it could hear the case while evaluating a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.  *See Alaska Stock,*

*LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. 3:09-CV-0061-HRH, 2010 WL 11520599, at

*1 (D. Alaska Apr. 21, 2010), *rev'd and remanded sub nom. Alaska Stock, LLC v. Houghton*

*Mifflin Harcourt Pub. Co.*, 747 F.3d 673 (9th Cir. 2014) (dismissing the 12(b)(1) motion).  In

evaluating a motion for a preliminary injunction, the court in *Metropolitan Regional* had to assess

whether the plaintiff was "likely to succeed on the merits," which often involves a weighing of

evidence outside the complaint.  *Metro. Reg'l Info. Sys.*, 722 F.3d at 595.  Plaintiffs introduced

evidence because these courts had to weigh evidence in these cases.  In evaluating a 12(b)(6)

motion, the court's goal is to test the sufficiency of the complaint on its own terms.

Here, it is plausible that ICBO-ES made the constituent works for hire as an agent of

ICBO, the "single statutory member" of ICBO-ES.  *See* ICC-ES Complaint, Ex. 3 (ECF No. 70-3)

at 20.  At this stage, Plaintiffs need not prove with external evidence that the works were made for

hire by written agreement or through an agency relationship.  *See Reid*, 490 U.S. at 738-43.  As a

result of the transfers described *supra*, it is therefore plausible that ICC-ES owns the Legacy

Works, which were properly registered and owned by ICBO.


### C.  *Plaintiffs Sufficiently Allege that Defendants Infringed the Legacy Works*

Defendants further argue that Plaintiffs do not satisfy the fourth and final element of a

copyright infringement claim, stating "by what acts [and] during what time the defendant

infringed the copyright."  *Newborn*, 391 F. Supp. 2d at 186.  This court previously found this

element satisfied for other copyrights because "ICC . . . exceeded what is required by *Newborn*'s

fourth prong by specifying a one-to-one correspondence between its copyrighted works and

Defendants' allegedly infringing works."  Memorandum Opinion at 9.

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

Defendants argue that the Legacy Works are different because here, Plaintiffs are "asserting infringement of copyrights [they do] not own." Defendants' ICC Memorandum at 19-20. Plaintiffs' Complaints only allege "infringement of <u>certain language</u> contained in the constituent Legacy Works" which it does not own. *Id.* at 19. Further, Defendants argue that Plaintiffs do not state which Legacy Works are within each Serial Publication. *See id.* at 20. Plaintiffs counter that the Complaints go beyond what is required in the same way that their other claims did. *See* ICC-ES's Opposition at 11-12.

The undersigned finds that Plaintiffs satisfy the fourth element of *Newborn* because Plaintiffs "specif[y] a one one-to-one correspondence between its copyrighted works and Defendants' allegedly infringing works." Memorandum Opinion at 9; *see, e.g.*, ICC-ES Complaint ¶ 81 ("Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ES Evaluation Report No. ESR-1215 and Legacy Work ICBO-ES Evaluation Report No. ER-3568, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 337[.]"). Plaintiffs also provided "specific dates for the registration of the various copyrights at issue in this case," and, in so doing, "sufficiently specified 'by what acts and 'during what time' Defendants allegedly infringed [their] copyrights." Memorandum Opinion at 10; *see, e.g.*, ICC-ES Complaint ¶ 80 ("Effective January 25, 1989, ICBO registered with the Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3568 . . . ."). Though Plaintiffs do not specify which Legacy Works are within which Serial Publications, Plaintiffs nonetheless have exceeded what this court has previously found sufficient. Having already determined that Plaintiffs have plausibly alleged transfer, registration, and ownership, the undersigned finds that the fourth element of *Newborn* is also satisfied.

ICC Evaluation Service, LLC et al. v. International Association of Plumbing and Mechanical Officials, Inc., et al.

**CONCLUSION**

Whether ICC-ES can ultimately prove that Defendants infringed the Legacy Works

copyrights depends on the myriad consolidations and transfers of copyright between the Legacy

Organizations and ICC, as well as between ICC and ICC-ES.  Plaintiffs will need to show, for

example, that ICBO ES Evaluation Report No. ER-3568 was made for hire on behalf of ICBO.

Then, Plaintiffs will need to show that ER-3568 was part of the transfer to ICC, and that ICC

transferred ER-3568 to ICC-ES.  At summary judgment, Plaintiffs will need to offer evidence

supporting the existence each transaction.  For now, however, Plaintiffs' allegations of transfers,

registration, ownership, and infringement are sufficient to state claims upon which relief can be

granted.

For the foregoing reasons, it is, on this 22nd day of November, 2019,

**RECOMMENDED** that Defendants' Partial Motion To Dismiss Plaintiff's Third

Amended Complaint (ECF No. 77) be **DENIED**; and it is

**FURTHER RECOMMENDED** that Defendants' Motion To Dismiss Plaintiff-

Intervenor ICC's Amended Intervenor Complaint (ECF No. 145) be **DENIED**.

_____
DEBORAH A. ROBINSON
United States Magistrate Judge

**Within fourteen days, any party may file written objections to this report and
recommendation.  The objections shall specifically identify the portions of the proposed
findings and recommendations to which objection is made and the basis for the objection.
In the absence of timely objections, further review of issues decided by this report and
recommendation may be waived.**