**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ICC EVALUATION SERVICE, LLC,<br><br>      Plaintiff,<br><br>and<br><br>INTERNATIONAL CODE COUNCIL, INC.,<br><br>      Plaintiff-Intervenor,<br><br>v.<br><br>INTERNATIONAL ASSOCIATION OF<br>PLUMBING AND MECHANICAL<br>OFFICIALS, INC., *et al.*,<br><br>      Defendants. |

Civil Action No. 16-54
(EGS)(DAR)

## MEMORANDUM OPINION

### I. Introduction

This copyright infringement action involves four entities in the national market for building product evaluation services. Pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, Plaintiff ICC Evaluation Service, LLC ("ES") and Plaintiff-Intervenor International Code Council, Inc. ("ICC," together with ES, the "ICC Entities") bring this lawsuit against the defendants, the International Association of Plumbing and Mechanical Officials, Inc. ("IAPMO") and IAPMO Evaluation Service, LLC ("IAPMO-ES," together with IAPMO, the "IAPMO Entities"). The ICC Entities assert ownership of copyrights to

certain publications and technical guidelines that assess whether building products comply with building codes and regulations. The ICC Entities allege that the IAPMO Entities violated the ICC Entities' copyrights by producing, distributing, and placing in the market products that are copies or derivatives of the copyrighted works without permission or a license. *See* Pl.'s Third Am. Compl. ("TAC"), ECF No. 70 at 33 ¶¶ 162-64; *see also* Pl.-Intervenor's First Am. Compl. ("FAC"), ECF No. 138 at 27-28 ¶¶ 124-25.[1]

Pending before the Court are the IAPMO Entities' objections to Magistrate Judge Deborah A. Robinson's Report and Recommendation ("R & R"), which recommends denying the IAPMO Entities' motions to dismiss Plaintiff's Third Amended Complaint and Plaintiff-Intervenor's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R & R, ECF No. 174 at 21. Raising no objections to the R & R, the ICC Entities urge this Court to adopt the R & R in its entirety. Upon careful consideration of Magistrate Judge Robinson's R & R, the parties' submissions, the relevant law, and the entire record herein, the Court **ADOPTS** Magistrate Judge Robinson's R & R, and **DENIES** the IAPMO Entities' motions to dismiss.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

## II. Background

The Court assumes the parties' familiarity with the factual background and procedural history in this case. The Court will provide an abbreviated overview of the relevant statutory scheme and then briefly summarize the relevant background to resolve the pending motions.

### A. The Copyright Act

Under the Copyright Act, "[c]opyright in a work . . . vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102). The Act provides a "works made for hire" exception to this rule. *Id*. An employer becomes the author rather than the person who actually creates the work under certain circumstances, such as if "a work [is] prepared by an employee within the scope of his or her employment," unless there is a written agreement to the contrary. 17 U.S.C. § 101 (defining "work made for hire"); *see also id*. § 201(b).

The copyright owner has certain "exclusive rights" to reproduce, distribute, or display the copyrighted works in addition to the right to prepare derivative works based on those

3

works. *Id*. § 106. "The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law." *Id*. § 201(d)(1); *see also id*. § 204(a) (copyright owner may transfer its rights through "an instrument of conveyance, or a note or memorandum of the transfer."). "Section 204(a)—frequently referred to as the Copyright Act's 'statute of frauds'—specifically contemplates a post-hoc 'note or memorandum of the transfer,' as distinct from an 'instrument of conveyance,' as a permissible means of satisfying the Act's writing requirement." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 827 (3d Cir. 2011). "Under the statute's plain terms it is clear that an oral transfer can be given legal effect by a subsequent signed writing." *Id*.

A violation of a copyright owner's exclusive rights constitutes copyright infringement. 17 U.S.C. § 501. "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." *Id*. § 501(b); *see also id*. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Finally, a plaintiff must prove two elements to establish

4

copyright infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Stenograph, LLC v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

### B. Factual and Procedural Background

Between 1977 and 2003, ICC's predecessors—at least eight regional code organizations and their affiliates (collectively, the "Legacy Organizations")—authored "technical Evaluation Reports" and created "original Acceptance Criteria." TAC, ECF No. 70 at 3 ¶ 9.[2] The two sets of publications—the Evaluation Reports and the Acceptance Criteria (collectively, the "Legacy Works")—were originally owned by the Legacy Organizations. *Id.* at 3 ¶ 9, 6 ¶ 28. As to the first type, the Evaluation Reports assess "components, methods, and materials for compliance with building codes and regulations." *Id.* at 4 ¶ 10. And the Evaluation Reports rely on third-party data. *Id.* at 2 ¶ 2. The

_____

[2] The facts—drawn from Plaintiff's Third Amended Complaint, Plaintiff-Intervenor's First Amended Complaint, the documents attached and incorporated by reference therein—are assumed to be true and construed liberally in the ICC Entities' favor for purposes of deciding the motions to dismiss. *See Klay v. Panetta*, 758 F.3d 369, 371 (D.C. Cir. 2014). As noted by Magistrate Judge Robinson, Plaintiff's Third Amended Complaint and Plaintiff-Intervenor's First Amended Complaint contain the same allegations related to the Legacy Works. R & R, ECF No. 174 at 2 n.1. For the sake of convenience, Magistrate Judge Robinson cited to the Third Amended Complaint in the "Background" section of the R & R, and this Court will follow suit.

Acceptance Criteria, the second type, are technical guidelines "use[d] as the basis for issuance of future Evaluation Reports." *Id.* at 4 ¶ 10. The Legacy Organizations published the Legacy Works on a monthly basis in "Serial Publications," which were registered with the United States Copyright Office. *Id.* at 8 ¶ 37.

In 2003, the Legacy Organizations merged to form ICC. *Id.* at 3 ¶ 8.[3] On or about January 31, 2003, the Legacy Organizations "donated, granted, transferred, assigned, and conveyed to ICC all of their right, title and interest in and to, *inter alia*, proprietary information including 'original works of authorship, copyrights, trademarks, trade names, logos, trade secrets, patents or other intellectual property rights,' and including the [Legacy Works at issue]." *Id.* at 7 ¶ 34 (quoting Pl.'s Sealed Ex. 1, ECF No. 71-1 at 3). ICC, in turn, assigned its ownership in the copyrighted Legacy Works to an organization that became ES. *Id.* at 8 ¶¶ 35-36, 9 ¶¶ 41-42, 10 ¶¶ 43-47, 11 ¶¶ 48-51, 12 ¶¶ 52-54.

---

[3] The Legacy Organizations included the following entities: (1) International Conference of Building Officials, Inc. ("ICBO"); (2) ICBO Evaluation Service, Inc. ("ICBO-ES"); (3) International Evaluation Service, Inc. ("IES"); (4) Southern Building Code Congress International ("SBCCI"); (5) SBCCI Public Service Testing and Evaluation Services, Inc. ("SBCCI PST & ESI"); (6) Building Officials and Code Administrators International ("BOCA"); (7) BOCA Evaluation Services ("BOCA-ES"); and (8) National Evaluation Services, Inc. ("NES"). TAC, ECF No. 70 at 3 ¶ 8.

ES, a subsidiary of ICC, prepares the Evaluation Reports and develops the Acceptance Criteria. *Id*. at 2 ¶¶ 1-2. ES hires "highly experienced professionals," such as architects and engineers, to provide the findings and recommendations in the technical evaluations. *Id*. at 2 ¶ 1. ES provides those reports, free of charge, on its website. *Id*. And ES makes the Acceptance Criteria available for purchase on its website. *Id*. at 2 ¶ 2. Competing in the same market, "IAPMO-ES creates evaluation criteria, evaluates building products, and publishes evaluation reports." *Id*. at 4 ¶ 14. And "IAPMO [, the parent company of IAPMO-ES,] develops model building codes, including the Uniform Plumbing Code and Uniform Mechanical Code." *Id*. at 4 ¶ 12.

On January 13, 2016, ES brought this action against the IAPMO Entities, asserting copyright infringement and state-law claims for breach of contract, tortious interference with contract, and tortious interference with prospective business relationships. *See generally* Compl., ECF No. 1. ES then filed the First Amended Complaint, alleging that the IAPMO Entities infringed thirteen Evaluation Reports and four Acceptance Criteria (the "non-Legacy Works"). First Am. Compl., ECF No. 13 at 5-6 ¶ 25. On September 19, 2016, this Court granted in part and denied in part the IAPMO Entities' motion to dismiss the First Amended Complaint. *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Officials*, No. 16-cv-54, 2016 U.S.

Dist. LEXIS 153518, *12-*27 (D.D.C. Sept. 19, 2016) (dismissing state-law claims). The copyright infringement claim survived the IAPMO Entities' motion to dismiss. *Id.* at *5-*12.

ES then filed a Second Amended Complaint, asserting new allegations related to the Legacy Works. *See* Pl.'s Second Am. Compl., ECF No. 62 at 8-9 ¶ 33. In response to the IAPMO Entities' partial motion to dismiss the Second Amended Complaint and request for a more definite statement with respect to the alleged ownership of the copyrighted Legacy Works, ES filed the Third Amended Complaint—the operative complaint—on April 13, 2018. *See generally* TAC, ECF No. 70. On the same day, ICC moved to intervene in this action to "protect any rights in and to copyrights or copyright registrations it may own in this litigation" in the event that ICC's assignment of the Legacy Works to ES was invalid. Pl.-Intervenor's Mot. to Intervene, ECF No. 73 at 2. Magistrate Judge Robinson, having been referred this case for full case management, granted ICC's motion. Order, ECF No. 117 at 1; *see also* Min. Order of July 17, 2017. ICC filed an intervenor complaint against the IAPMO Entities on May 24, 2019, *see generally* Pl.-Intervenor's Compl., ECF No. 122, and then filed an amended intervenor complaint on July 1, 2019, *see generally* Pl.-Intervenor's FAC, ECF No. 138.

ES claims ownership of the copyrighted Legacy Works and non-Legacy Works. TAC, ECF No. 70 at 16 ¶ 64. ES asserts one

8

count of copyright infringement against the IAPMO Entities, *id*. at 33 ¶¶ 162-67, seeking "to enjoin [the IAPMO Entities'] widespread unlawful behavior and to recover ES's damages attributable to Defendants' copyright infringement relating to [the works at issue]," *id*. at 2 ¶ 3. The operative complaint provides a list of eight copyrighted Legacy Works, *id*. at 15 ¶ 62; and nineteen copyrighted non-Legacy Works, *id*. at 13-14 ¶ 59. ICC seeks, *inter alia*, a declaratory judgment that ES owns the copyrighted Legacy Works. Pl.-Intervenor's FAC, ECF No. 138 at 28-29. Alternatively, ICC seeks the same relief as ES if the Court determines ES lacks ownership in the copyrighted Legacy Works. *Id*. at 29-30.

On April 27, 2018, the IAPMO Entities moved to dismiss the Third Amended Complaint as to the eight Legacy Works. *See* Defs.' Partial Mot. to Dismiss, ECF No. 77 at 1-2. The IAPMO Entities moved to dismiss ICC's First Amended Complaint on July 15, 2019. *See* Defs.' Mot. to Dismiss, ECF No. 145 at 1. On November 22, 2019, Magistrate Judge Robinson issued the R & R. *See generally* R & R, ECF No. 174. The IAPMO Entities submitted objections to the R & R. *See generally* Defs.' Objs., ECF No. 176. The ICC Entities filed a response. *See generally* Pls.' Resp., ECF No. 178. The IAPMO Entities then filed a reply brief. *See* Defs.'

Reply, ECF No. 179.[4] The objections are ripe and ready for the Court's adjudication.

## III. Legal Standard

### A. Objections to a Magistrate Judge's R & R

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R & R] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation omitted).

Proper objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented and considered by the magistrate judge are not 'properly objected

---

[4] The IAPMO Entities requested an oral hearing. *See* Defs.' Objs., ECF No. 176 at 1. The Court will not exercise its discretion to hold a hearing. *See* LCvR 7(f). Accordingly, the Court **DENIES** the IAPMO Entities' request for an oral hearing.

to' and are therefore not entitled to de novo review." *Shurtleff
v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (citation omitted). A
court need not consider cursory objections made only in a
footnote. *Hutchins v. District of Columbia*, 188 F.3d 531, 539
n.3 (D.C. Cir. 1999); *see also Potter v. District of Columbia*,
558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring)
("[J]udges are not like pigs, hunting for truffles buried in
briefs or the record.") (citation and internal quotation marks
omitted).

### B. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

To survive a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(1), "the plaintiff bears the burden of
establishing jurisdiction by a preponderance of the
evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48,
53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S.
555, 561 (1992)). "Because Rule 12(b)(1) concerns a court's
ability to hear a particular claim, the court must scrutinize
the plaintiff's allegations more closely when considering a
motion to dismiss pursuant to Rule 12(b)(1) than it would under
a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S.
Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so
doing, the court must accept as true all of the factual
allegations in the complaint and draw all reasonable inferences

in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 63 (D.D.C. 2001). Finally, "[t]he court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

### C. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint." *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017). "[T]he complaint is construed liberally in the plaintiff['s] favor, and [courts] grant [the] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual

12

content that allows the court to draw [a] reasonable inference
that the defendant is liable for the misconduct alleged." *Id.*
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).
A complaint alleging facts which are "merely consistent with a
defendant's liability . . . stops short of the line between
possibility and plausibility of entitlement to relief." *Id.*
(*citing Twombly*, 550 U.S. at 557) (internal quotation marks
omitted).

## IV.  Analysis

The main dispute at this stage of the litigation involves
two issues: (1) whether the ICC Entities sufficiently allege
that they own the copyrighted Legacy Works; and (2) whether
those individual works were registered as part of the Serial
Publications with the U.S. Copyright Office. *See* Defs.' Mem. of
P. & A. in Supp. of Defs.' Partial Mot. to Dismiss ("Defs.'
Partial Mem."), ECF No. 77-1 at 5-6; *see also* Pl.'s Opp'n, ECF
No. 83 at 5. The IAPMO Entities move to dismiss for lack of
subject-matter jurisdiction under Rule 12(b)(1), arguing that
the ICC Entities lack standing because the ICC Entities fail to
establish ownership of the copyrighted Legacy Works. *See* Defs.'
Partial Mem., ECF No. 77-1 at 8; *see also* Defs.' Mem. in Supp.
of Defs.' Mot. to Dismiss ("Defs.' Mem."), ECF No. 145-1 at 8.
The IAPMO Entities separately move to dismiss for failure to
state a claim under Rule 12(b)(6), contending that the ICC

Entities fail to sufficiently allege: (1) ownership of the individual Legacy Works; (2) registration of the individual Legacy Works within the Serial Publications; and (3) the individual Legacy Works are "works made for hire." *See* Defs.' Partial Mem., ECF No. 77-1 at 15-20; *see also* Defs.' Mem., ECF No. 145-1 at 18-19. The Court first addresses the standing issue, and then turns to the merits.

### A. Standing

The IAPMO Entities' motions are predicated on the argument that the ICC Entities lack standing to sue under the Copyright Act because neither ES nor ICC own the copyrights in the Legacy Works. *See* Defs.' Partial Mem., ECF No. 77-1 at 8-14; *see also* Defs.' Mem., ECF No. 145-1 at 8-18. The IAPMO Entities do not challenge the ICC Entities' Article III standing. *See* R & R, ECF No. 174 at 7; *see also* Defs.' Partial Mem., ECF No. 77-1 at 8. Nonetheless, this Court must assure itself that constitutional standing exists in this case before proceeding to the merits. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[I]t is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.").

In their objections to the R & R, the IAPMO Entities concede that they did not address a single element of Article III standing in their motions. Defs.' Objs., ECF No. 176 at 12.

14

But the IAPMO Entities contend that their standing arguments as to the ICC Entities' alleged ownership of the copyrighted Legacy Works "*implicitly* challenge [the ICC Entities'] constitutional standing." *Id.* (emphasis added). And the IAPMO Entities argue that they "are expressly challenging [the ICC Entities'] *statutory standing* under the Copyright Act" by arguing that the ICC Entities fail to establish ownership of the copyrighted Legacy Works. *Id.* (emphasis added).

Article III standing is separate and distinct from "statutory standing." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998) (explaining that statutory standing "has nothing to do with whether there is a case or controversy under Article III"). "Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const. art. III, § 2). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*,

573 U.S. at 157-58 (quoting *Lujan*, 504 U.S. at 560-61). A
plaintiff bears the burden of demonstrating constitutional
standing. *Steel Co.*, 523 U.S. at 104.

Statutory standing concerns the question of "whether a
legislatively conferred cause of action encompasses a particular
plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control
Components, Inc.*, 572 U.S. 118, 127 (2014). The Supreme Court
has explained that statutory standing is "misleading, since 'the
absence of a valid (as opposed to arguable) cause of action does
not implicate subject-matter jurisdiction, *i.e.*, the court's
statutory or constitutional *power* to adjudicate the case.'" *Id.*
at 128 n.4 (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of
Md.*, 535 U.S. 635, 642-643 (2002)). Thus, "the issue is whether
[the plaintiff] has a statutory right to sue for infringement
under the Copyright Act, which is properly addressed in a motion
under Rule 12(b)(6), not whether [the plaintiff] has satisfied
the requirements of Article III, which is properly addressed in
a motion under Rule 12(b)(1)." *Minden Pictures, Inc. v. John
Wiley & Sons*, *Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015).

With these principles in mind, the Court turns to the IAPMO
Entities' three arguments for dismissal on standing grounds:
(1) the ICC Entities fail to establish that ES owns the
copyrighted Legacy Works; (2) the ICC Entities do not establish
that the copyrights were transferred to ES; and (3) the ICC

16

Entities do not sufficiently allege that the Legacy Works were
"made for hire" on behalf of one of the Legacy Organizations
that transferred the copyrights to the ICC Entities. *See* Defs.'
Mem., ECF No. 145-1 at 8-18; *see also* Defs.' Partial Mem., ECF
No. 77-1 at 8-14.

Magistrate Judge Robinson determined that the three issues
raised by the IAPMO Entities—"[1] [w]hether [ES] owns the Legacy
Works, [2] whether the alleged transfers of copyright ownership
took place, and [3] whether the underlying works were 'made for
hire'"—are "merits questions." R & R, ECF No. 174 at 7.
Magistrate Judge Robinson found that "[t]he bulk of the
challenges in both motions [to dismiss] are not jurisdictional,
but instead go to the merits of [the ICC Entities'] claims." *Id.*
at 6. As such, Magistrate Judge Robinson concluded that
dismissal under Rule 12(b)(1) is improper where, as here,
"arguments for dismissal are 'intertwined with facts central to
the merits of the dispute.'" *Id.* at 7 (quoting *Star Sci., Inc.
v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 394 (D. Md.
2001)).

Having found that the IAPMO Entities raised "three issues
that could conceivably relate to subject matter jurisdiction,"
*id.* at 7, Magistrate Judge Robinson rejected all of them, *id.* at
7-9. First, Magistrate Judge Robinson rejected the IAPMO
Entities' argument that "[the ICC Entities] do not have a

17

claim," which would arguably deprive the Court of subject-matter jurisdiction. *Id.* at 7. Magistrate Judge Robinson explained that the IAPMO Entities' argument "is not a proper basis upon which to grant a [Rule] 12(b)(1) motion" because "[a]nswering [the IAPMO Entities' standing arguments] will determine whether Plaintiffs have stated a proper claim under the Copyright Act but do not implicate this court's ability to hear the merits of the dispute." *Id.* Next, Magistrate Judge Robinson found that there was "no jurisdictional problem with ICC seeking declaratory relief as a remedy" given that ICC seeks declaratory relief rather than asserting a count for declaratory judgment. *Id.* at 8.

Finally, Magistrate Judge Robinson rejected the IAPMO Entities' argument—that ICC fails to meet the jurisdictional requirement under Section 411 of the Copyright Act requiring the registration of copyrights before filing a suit, Defs.' Mem., ECF No. 145-1 at 17 (citing 17 U.S.C. § 411)—because the Supreme Court has made clear that the "registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction." R & R, ECF No. 174 at 8-9 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010)).

The IAPMO Entities object to the R & R's conclusions that: (1) the IAPMO Entities' fail to identify any elements of Article

18

III standing that the ICC Entities failed to satisfy; and
(2) the IAPMO Entities' jurisdictional issues are "merits
questions." Defs.' Objs., ECF No. 176 at 9-12. The Court
addresses each objection in turn.[5]

### 1. Constitutional Standing

It is undisputed that the IAPMO Entities' motions do not
address the three elements of Article III standing: (1) injury-
in-fact, (2) causation, and (3) redressability. *See* R & R, ECF
No. 174 at 7 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,
1547-48 (2016)); *see also* Defs.' Partial Mem., ECF No. 77-1 at
8-14. The IAPMO Entities concede that their "motions did not
frame the argument in terms of 'harm' or 'injury.'" Defs.'
Objs., ECF No. 176 at 12.

In "considering whether a plaintiff has Article III
standing, a federal court must assume *arguendo* the merits of his
or her legal claim." *Parker v. District of Columbia*, 478 F.3d
370, 377 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia
v. Heller*, 554 U.S. 570 (2008); *see also Schnitzler v. United
States*, 761 F.3d 33, 40 (D.C. Cir. 2014) ("[I]n reviewing the

---

[5] The IAPMO Entities do not object to Magistrate Judge Robinson's
findings that there are no jurisdictional issues with respect
to: (1) ICC's request for declaratory relief; and (2) ICC's
alleged failure to register the Legacy Works under Section 411
of the Copyright Act. *See* R & R, ECF No. 174 at 7-8; *see also*
Defs.' Objs., ECF No. 176 at 8-23. Having found no clear error,
this Court **ADOPTS** those findings in the R & R. *See Houlahan*, 979
F. Supp. 2d at 88.

standing question, the court must . . . assume that on the merits the plaintiffs would be successful in their claims." (citation and internal quotation marks omitted)). Here, the Court must assume *arguendo* that the ICC Entities' copyright infringement claims have merit, and that the IAPMO Entities infringed on the ICC Entities' copyrighted Legacy Works. The ICC Entities allege that they have suffered damages and will continue to suffer damages as a result of the IAPMO Entities' alleged infringement. *See*, *e.g.*, Pls.' Resp., ECF No. 178 at 9-10; TAC, ECF No. 70 at 2 ¶ 3; Pl.-Intervenor's FAC, ECF No. 138 at 8 ¶ 31.

The IAPMO Entities do not dispute that the ICC Entities meet the causation and redressability prongs, *see* Defs.' Objs., ECF No. 176 at 12; and it is clear that the ICC Entities satisfy those requirements. Plaintiff's Third Amended Complaint and Plaintiff-Intervenor's First Amended Complaint allege that ES owns the copyrighted Legacy Works, the IAPMO Entities' infringement of those copyrighted works have caused the ICC Entities to suffer damages, and an injunction restraining such wrongful conduct would redress that injury. *See, e.g.*, TAC, ECF No. 70 at 33 ¶¶ 162-67, 34-37; Pl.-Intervenor's FAC, ECF No. 138 at 8 ¶ 31.

In their objections to the R & R, the IAPMO Entities only challenge the "injury" prong, arguing that the ICC Entities

20

"could not have suffered any harm as a result of the alleged infringement" without ownership of the copyrighted Legacy Works. Defs.' Objs., ECF No. 176 at 12. In opposition, the ICC Entities contend that Plaintiff's Third Amended Complaint and Plaintiff-Intervenor's First Amended Complaint "adequately plead injury through their claim of infringement." Pls.' Resp., ECF No. 178 at 9-10.

### a. Injury-in-Fact

The ICC Entities easily satisfy Article III standing's injury-in-fact requirement. A plaintiff must demonstrate "injury in fact," which is (a) concrete and particularized and (b) actual or imminent. *Lujan*, 504 U.S. at 560-61. Here, Plaintiff's Third Amended Complaint and Plaintiff-Intervenor's First Amended Complaint assert that ES is the owner of the copyrighted Legacy Works. *See* TAC, ECF No. 70 at 16 ¶ 64; *see also* Pl.-Intervenor's FAC, ECF No. 138 at 15 ¶ 68; *cf. Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 (D.D.C. 2015) ("[A] party alleging copyright infringement need only claim ownership over the copyrighted work."). The ICC Entities allege that they have suffered and continue to suffer concrete and particularized harms as a result of the infringing conduct by the IAPMO Entities. *See* TAC, ECF No. 70 at 17 ¶ 73 (alleging "Defendants have used, infringed upon, distributed and otherwise profited from, and, unless enjoined by this Court, will in the

future use, infringe upon, distribute and otherwise profit from the ES's Copyrighted Works"); *id.* at 18 ¶ 81 (alleging that the IAPMO Entities "have knowingly and willfully copied and/or prepared derivative works using substantial portions of" the copyrighted Legacy Works "and are or have been publishing and distributing it on the Internet as" their own publications without permission or license); *id.* at 34 (G) (seeking an award of "actual damages and any profits attributable to Defendants' infringement"). The Court therefore finds that the ICC Entities have sufficiently alleged concrete harms to satisfy the injury prong.

### b. Causation and Redressability

The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has articulated the following test for the second and third prongs of Article III standing:

> Causation, or "traceability" examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff. Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff.

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996 (citations omitted). Here, ES seeks to enjoin the IAPMO Entities' alleged past and continuing copyright infringement,

and ES alleges a causal connection between the IAPMO Entities'
actions and the alleged injury from their infringement. *See* TAC,
ECF No. 70 at 33 ¶¶ 164-67.

The remedy sought by the ICC Entities would alleviate the
particularized injury because: (1) ICC seeks, *inter alia*, a
declaration that the Legacy Organizations donated and assigned
the copyrighted Legacy Works to ICC and, in turn, ICC assigned
the copyrights to ES, *see* Pl.-Intervenor's FAC, ECF No. 138 at
28-29 (A); and (2) ES seeks, *inter alia*, an injunction
preventing the IAPMO Entities from "marketing, offering,
selling, disposing of, licensing, leasing, transferring,
displacing, advertising, reproducing, developing, or
manufacturing any works derived or copied from" the copyrighted
Legacy Works without authorization or license, TAC, ECF No. 70
at 34 (E). The Court therefore finds that the ICC Entities
allege sufficient facts to survive the IAPMO Entities' Rule
12(b)(1) motions to dismiss for lack of standing.

## 2. Merits Questions

The IAPMO Entities argue that Magistrate Judge Robinson
erred in concluding that their standing arguments related to the
ICC Entities' alleged ownership of the copyrighted Legacy Works
"do not implicate [the] [C]ourt's ability to hear the merits of
the dispute." Defs.' Objs., ECF No. 176 at 9 (quoting R & R, ECF
No. 174 at 7). The IAPMO Entities contend that the ICC Entities'

alleged ownership of the copyrighted Legacy Works is "central to the foundational requirement of copyright ownership, and thus, central to the question of standing." *Id.* at 10. In response, the ICC Entities do not dispute that "copyright ownership is a standing issue," but the ICC Entities contend that the IAPMO Entities "ignore the governing law regarding *when* a court must resolve standing questions that are intertwined with the merits." Pls.' Resp., ECF No. 178 at 9. The Court agrees.

It is well established that "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946). To support their position, the ICC Entities rely on *Herbert v. National Academy of Sciences*, 974 F.2d 192 (D.C. Cir. 1992). Pls.' Resp., ECF No. 178 at 8. In *Herbert*, the D.C. Circuit instructed that "though the trial court may rule on disputed jurisdictional facts at any time, if [those facts] are inextricably intertwined with the merits of the case [the trial court] should usually defer its jurisdictional decision until the merits are heard." 974 F.2d at 198. According to the IAPMO Entities, this rule is inapplicable "when the court does not resolve any disputed material facts." Defs.' Reply, ECF No. 179 at 3. And the IAPMO Entities contend that they "are not asking this Court to resolve any disputed jurisdictional facts." *Id.* For the reasons explained below, the Court disagrees.

To establish copyright infringement, a plaintiff must prove, *inter alia*, "*ownership of a valid copyright*." *Feist Publ'ns, Inc.*, 499 U.S. at 361 (emphasis added). Under the Copyright Act, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, ES alleges that it owns the copyrighted Legacy Works. TAC, ECF No. 70 at 16 ¶ 64. ES attached copyright registration certificates to the Third Amended Complaint to demonstrate its ownership of the copyrighted Legacy Works. Pl.'s Opp'n, ECF No. 83 at 16.[6] According to the ICC Entities, the Legacy Organizations, including ICBO, donated and assigned valid copyrights and copyright registrations in the Legacy Works to ICC. TAC, ECF No. 70 at 7-8 ¶¶ 34-35, 38. The ICC Entities

---

[6] The U.S. Copyright Office issued the Certificates of Registration attached as exhibits to the TAC. *See generally* Pl.'s Exs. 12-19, ECF Nos. 70-12 through 70-19; Pl.'s Ex. 20, ECF No. 70-20; Pl.'s Exs. 21-22, ECF Nos. 70-21 through 70-22; Pl.'s Ex. 30, ECF No. 70-30; Pl.'s Exs. 32-38, ECF Nos. 70-32 through 70-38; Pl.'s Exs. 40-42, ECF Nos. 70-40 through 70-42; Pl.'s Exs. 50-52, ECF Nos. 70-50 through 70-52; Pl.'s Exs. 54-59, ECF Nos. 70-54 through 70-59; Pl.'s Exs. 64-66, ECF Nos. 70-64 through 70-66. The Court may consider these documents and materials outside of the pleadings "to resolve the question [of] whether it has jurisdiction in [this] case." *DBW Partners, LLC v. Bloomberg, L.P.*, No. CV 19-311 (RBW), 2019 WL 5892489, at *1 n.2 (D.D.C. Nov. 12, 2019) (quoting *Rann*, 154 F. Supp. 2d at 64).

allege that the "Restricted Donation Agreement," which is attached as an exhibit to the Third Amended Complaint, shows that the Legacy Organizations transferred and assigned the copyrighted Legacy Works to ICC. *Id.* at 7 ¶ 34; *see also* Pl.'s Ex. 1, ECF No. 71-1 at 3. In turn, ICC donated and assigned the copyrights and copyright registrations from the predecessor in interest—NES—to ES on January 31, 2003. TAC, ECF No. 70 at 8 ¶ 35; *see also* Pl.'s Ex. 2, ECF No. 70-2 at 2 ("Confirmatory Assignment"). ES assumed all of the evaluation activities of its predecessor. TAC, ECF No. 70 at 8 ¶¶ 36-39.

The IAPMO Entities, however, dispute whether ICBO transferred the copyrights in the Legacy Works to ICC, and whether ICC later transferred those copyrights to ES. Defs.' Partial Mem., ECF No. 77-1 at 9-11. The IAPMO Entities' first argument—that the copyright registration certificates attached as exhibits to the Third Amended Complaint only establish that "certain serial publications, which allegedly include the Legacy Works, were transferred from ICBO to ICC" and "ICC is not the Plaintiff in this lawsuit," *id.* at 8—is moot because ICC is the Plaintiff-Intervenor, *see generally* Pl.-Intervenor's FAC, ECF No. 138 at 1. The IAPMO Entities' next argument is that the "Confirmatory Assignment . . . is not an assignment or transfer agreement" because it was drafted during this litigation, Defs.' Partial Mem., ECF No. 77-1 at 11; and "[n]owhere in Plaintiff's

Third Amended Complaint does [ES] allege that the transfer of copyrights was made pursuant to an oral agreement," *id*. at 13. The IAPMO Entities contend that "an oral agreement would have been inconsistent with the manner in which all other aspects of the 2003 ICC transactions were handled." *Id*.

In response, the ICC Entities rely on the "relevant transfer of ownership documents." Pl.'s Opp'n, ECF No. 83 at 17. The ICC Entities argue that the "Confirmatory Assignment" constitutes a valid transfer of the copyrighted Legacy Works, *id*. at 17-18; and that the IAPMO Entities fundamentally misunderstand Section 204(a) of the Copyright Act that "specifically contemplates a post-hoc 'note or memorandum of the transfer,'" which is a "permissible means of satisfying the Act's writing requirement," *id*. at 17 (quoting *Barefoot Architect, Inc.*, 632 F.3d at 827). As to the oral agreement to transfer the copyrighted Legacy Works to ICC, *see* TAC, ECF No. 70 at 7 ¶¶ 41-43, the ICC Entities point out that there was an oral agreement as evidenced by an "Information Statement," dated August 1, 2002, that was distributed to members of the Legacy Organizations and that discussed the upcoming Annual Meeting of ICBO where voting members were asked to consider and vote on, *inter alia*, a resolution to transfer certain assets and operations to ICC, Pl.'s Opp'n, ECF No. 83 at 18-19 (citing Pl.'s Ex. 3, ECF No. 70-3 at 2). The Court therefore finds that

27

there is clearly a dispute as to the ownership and transfer of the copyrighted Legacy Works. *Compare* Defs.' Partial Mem., ECF No. 77-1 at 8-14, *with* Pl.'s Opp'n, ECF No. 83 at 14-20.

Next, the parties dispute whether one of the Legacy Organizations, ICBO, owned and authored, as works-made-for-hire, the copyrighted Legacy Works. *Compare* Defs.' Mem., ECF No. 145-1 at 8, *with* Pl.-Intervenor's Opp'n, ECF No. 148 at 3-4. Like ES, ICC attached copyright registration certificates to Plaintiff-Intervenor's First Amended Complaint. *See* Pl.-Intervenor's FAC, ECF No. 138 at 18-19 ¶¶ 84-85. ICC alleges that the certificates "cover[] the collective work as a whole and the underlying contributions authored as works made for hire of ICBO," *id.* at 18 ¶ 84; and ICC argues that those certificates "provide *prima facie* evidence of the validity of the copyrights in the collective and Legacy Works and the authorship and ownership facts stated therein, i.e., ICBO's ownership and authorship of the collective and Legacy Works as works-for-hire," Pl.-Intervenor's Opp'n, ECF No. 148 at 7 (citing 17 U.S.C. § 410(c)). ICC contends that the certificates can serve as registrations for the individual, "constituent works"—the individual Legacy Works—contained in the "collective works" (*i.e.* Serial Publications). *Id.* at 8.[7]

---

[7] Under the Copyright Act, the term "collective work" means "a work, such as a periodical issue, anthology, or encyclopedia, in

The IAPMO Entities, however, dispute the ICC Entities'
contention that the certificates demonstrate ICBO's ownership in
the constituent parts (or the Legacy Works) of the Serial
Publications, Defs.' Mem., ECF No. 145-1 at 8, because the
information in the certificates fails to indicate that "ICBO
sought to register anything but a 'collective work,'" *id.* at 11.
The IAPMO Entities characterize ICC's allegation—that the Legacy
Works were created as works made for hire on behalf of ICBO—as
"nothing more than a bare legal conclusion couched as a factual
allegation," *id.* at 14, because the individual Legacy Works in
the Serial Publications were written by a different entity,
ICBO-ES, *id.* at 12-14.

   "Although courts must, at times, resolve factual disputes
raised in threshold jurisdictional motions," a court should
defer its jurisdictional decision when the disputed
jurisdictional facts are "indistinguishable from the central
question on the merits of who was at fault." *Hale v. United*

---

which a number of contributions, constituting separate and
independent works in themselves, are assembled into a collective
whole." 17 U.S.C. § 101. The Act defines the term "compilation,"
which includes collective works, as "a work formed by the
collection and assembling of preexisting materials or of data
that are selected, coordinated, or arranged in such a way that
the resulting work as a whole constitutes an original work of
authorship." *Id.* Here, the parties agree that the Serial
Publications are a form of collective works. *See* Pls.' Opp'n,
ECF No. 148 at 4 n.2; *see also* Defs.' Reply, ECF No. 152 at 6-8,
14.

*States*, No. CV 13-1390 (RDM), 2015 WL 7760161, at *6 (D.D.C. Dec. 2, 2015). Following discovery, the IAPMO Entities are free to argue that the ICC Entities do not own the copyrighted Legacy Works, that the transfer of the copyrighted Legacy Works did not occur, and that ICBO did not own or author the collective works and the constituent works. Such arguments, however, rely on the resolution of contested factual issues and require that "the parties first be afforded a more complete opportunity to discover and to dispute the relevant facts." *Hale*, 2015 WL 7760161 at *6.

The Court concludes that the three issues—(1) the alleged ownership of the Legacy Works; (2) the alleged transfer of the Legacy Works; and (3) the alleged underlying "works made for hire"—are disputed jurisdictional issues that are inextricably intertwined with the merits of the ownership element that the ICC Entities must show to establish copyright infringement. *See, e.g.*, *Latin Am. Music Co., Inc. v. Disco Hit Prods.*, No. CV 02-1788 (ADC), 2008 WL 11500379, at *3 (D.P.R. June 13, 2008) (finding that a disputed jurisdictional issue of plaintiff's ownership of copyrights existed where "the factual issue on which subject matter jurisdiction turn[ed] [was] whether [plaintiff] ha[d] valid copyrights for the songs it claims were infringed"). This Court "must avoid resolving issues contested on the merits under the banner of standing." *Pietrangelo v.*

*Refresh Club, Inc.*, No. 18-CV-1943 (DLF), 2019 WL 2357379, at *4
(D.D.C. June 4, 2019) (denying motion to dismiss for lack of
subject-matter jurisdiction where "the plaintiff [did not have]
the benefit of discovery, and the factual record remain[ed]
incomplete"). Magistrate Judge Robinson correctly concluded that
the ownership, transfer, and "works made for hire" issues should
be resolved on the merits. R & R, ECF No. 174 at 6-7. The Court
therefore finds that the operative complaints adequately allege
subject-matter jurisdiction, and the IAPMO Entities' challenge
to the disputed factual issues is premature. *See Herbert*, 974
F.2d at 198; *see also Hale*, 2015 WL 7760161, at *6. Accordingly,
the Court **DENIES** the IAPMO Entities' motions to dismiss for lack
of subject-matter jurisdiction. The IAPMO Entities may renew
their standing arguments after the parties engage in discovery.

### B. Merits

The Court next turns to the merits. The IAPMO Entities
object to the R & R's conclusions that: (1) the ICC Entities
sufficiently allege that the Legacy Organizations and ICC
assigned the copyrighted Legacy Works to ES; (2) the transfer
from ICBO to ICC included the copyrighted Legacy Works; (3) the
IAPMO Entities lack standing to challenge the "Confirmatory
Assignment"; and (4) the copyright registration certificates for
the Serial Publications (collective works) cover the individual
Legacy Works (constituent works). Defs.' Objs., ECF No. 176 at

31

13-23. For the reasons explained below, the Court adopts
Magistrate Judge Robinson's recommendations and overrules the
IAPMO Entities' objections to the R & R. Before turning to the
objections, the Court will address the applicable pleading
standard at this stage of the proceedings.

### 1. The Applicable Pleading Standard

As an initial matter, the Court observes that the IAPMO
Entities attempt to convert their Rule 12(b)(6) motions into
motions for summary judgment. *See, e.g.*, Defs.' Partial Mot.,
ECF No. 77-1 at 15-20; Defs.' Reply, ECF No. 90 at 10-14; Defs.'
Mem., ECF No. 145-1 at 18-21; Defs.' Reply, ECF No. 152 at 21-
22. For example, the IAPMO Entities argue that "there is no
*evidence* that the individual 'Legacy Work' copyrights were
transferred," Defs.' Partial Mot., ECF No. 77-1 at 2 (emphasis
added); and that ES "failed to *prove* ownership with respect to
the individual Legacy Works," *id*. at 18 (emphasis added). At the
motion to dismiss stage, however, there is no heightened
pleading standard. *Twombly*, 550 U.S. at 570 ("[W]e do not
require heightened fact pleading of specifics, but only enough
facts to state a claim to relief that is plausible on its
face.").

The ICC Entities correctly note that "[t]his isn't a fraud
case under Rule 9(b)—ES and ICC are not required to plead the
who, what, when, why, or how of the alleged corporate transfer

to satisfy Rule 8(a)." Pls.' Resp., ECF No. 178 at 14. Indeed, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted). In ruling on the Rule 12(b)(6) motions, this Court evaluates the ICC Entities' operative complaints to determine whether the factual allegations satisfy the pleading requirements of *Iqbal* and *Twombly*. The Court may consider documents attached as exhibits to the complaints, documents incorporated by reference, and documents upon which the complaints rely without converting the motions to dismiss into motions for summary judgment. *Sierra v. Hayden*, 254 F. Supp. 3d 230, 237 (D.D.C. 2017).

As this Court previously explained, "at the motion to dismiss stage . . . '[t]here is no requirement that copyright claims must be pled with particularity.'" *ICC Evaluation Serv., LLC*, 2016 U.S. Dist. LEXIS 153518, at *8 (quoting *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009)). "At the pleading stage, a party alleging copyright infringement need only claim ownership over the copyrighted work, that the party has registered the work in accordance with statute, and that the defendant infringed." *Roe*, 85 F. Supp. 3d at 99. "To require a plaintiff to do more, at the

motion to dismiss stage, would be to subject copyright plaintiffs to a heightened level of pleading, something this Court has been strictly proscribed from doing." *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013).

>  2. **The ICC Entities Sufficiently Allege that the Legacy Organizations Transferred All of the Copyrights to ICC, and ICC Transferred Its Copyrights to ES**

The IAPMO Entities do not dispute that ICBO—one of the Legacy Organizations—transferred to ICC the copyrighted Serial Publications pursuant to the "Restricted Donation Agreement." *See* Defs.' Partial Mem., ECF No. 77-1 at 9-10; *see also* Pl.'s Ex. 1, ECF No. 71-1 at 3. Rather, the IAPMO Entities argue that ICBO did not transfer the copyrights in the individual Legacy Works to ICC because ICBO only owned and registered the Serial Publications—not the individual Legacy Works. *See* Defs.' Mem., ECF No. 145-1 at 11-13. For the reasons explained below, the Court adopts Magistrate Judge Robinson's finding that the ICC Entities "sufficiently allege that ICBO transferred all of its copyrights after ICBO and ICC memorialized a 'Restricted Donation Agreement' on January 31, 2003." R & R, ECF No. 174 at 10.

"Section 204 of the Copyright Act invalidates attempted transfers of copyright ownership made without a writing." *Atkins v. Fischer*, 331 F.3d 988, 991 (D.C. Cir. 2003) (citing 17 U.S.C.

34

§ 204(a)). A copyright transfer is valid "by operation of law" or a written "instrument of conveyance, or a note or memorandum of the transfer" that is "signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Courts have recognized that "an oral assignment may be confirmed later in writing." *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003); *accord Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (recognizing that "17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer").

In this case, the IAPMO Entities challenge two transfers: (1) the transfer of the copyrights from the Legacy Organizations to ICC; and (2) the transfer of the copyrights from ICC to ES. R & R, ECF No. 174 at 10. With respect to the first transfer, ICBO registered the Serial Publications with the U.S. Copyright Office, and ICBO allegedly transferred its copyrights in the Serial Publications to ICC on January 31, 2003 under the terms of the "Restricted Donation Agreement." TAC, ECF No. 70 at 8 ¶¶ 37-38. And ICBO allegedly "intended that the entity that became ES would assume all the evaluation activities then conducted by ICBO and the other Legacy Organizations." *Id*. at 8 ¶ 39. The IAPMO Entities acknowledge that ICBO was the owner of the Serial Publications because each copyright registration certificate

lists ICBO as the "copyright claimant." Defs.' Mem., ECF No. 145-1 at 11.

The IAPMO Entities do not contest that ICBO transferred all of its copyrights to ICC. *See* R & R, ECF No. 174 at 10; *see also* Defs.' Objs., ECF No. 176 at 13. Indeed, the "Information Statement" provides, in relevant part, that "ICBO . . . will transfer and assign *all of* [its] *assets and contracts* to ICC (ICBO) LLC," and the "code-related assets and contracts . . . will then be transferred to ICC under an agreement . . . ." Pl.'s Ex. 3, ECF No. 70-3 at 37. And ICBO conveyed to ICC, *inter alia*, the "original works of authorship, copyrights," and "other intellectual property rights." Pl.'s Ex. 1, ECF No. 71-1 at 3.

The IAPMO Entities appear to argue that Magistrate Judge Robinson did not consider a provision in the "Information Statement" that states three Legacy Organizations—BOCA, ICBO-ES, and SBCCI PST"—"will transfer all evaluation-related assets and contracts to [ES]." Defs.' Objs., ECF No. 176 at 13 (quoting Pl.'s Ex. 3, ECF No. 70-3 at 38). Such an argument, however, fails because Magistrate Judge Robinson based the conclusion— that the ICC Entities sufficiently allege that the Legacy Organizations and ICC intended to assign the copyrights in the Legacy Works to ES—on all of the provisions in the "Information Statement" and the "subsequent reorganization of the Legacy Organizations." R & R, ECF No. 174 at 12. The Court must

36

construe the operative complaints in the ICC Entities' favor, view the factual allegations as a whole, accept them as true, and grant the ICC Entities the benefit of all inferences that can be derived from the alleged facts. *See Kowal*, 16 F.3d at 1276. In doing so, the Court can reasonably infer from the alleged facts and the documents attached to the operative complaints that the Legacy Organizations transferred all of the copyrights to ICC. The remaining question is whether those copyrights included the individual Legacy Works contained within the Serial Publications.

With regard to the second transfer of the copyrights from ICC to ES, the IAPMO Entities' argument—that ICC did not transfer the copyrighted Legacy Works to ES—is unavailing for two reasons. First, the allegations in the operative complaint give rise to an inference that the "Confirmatory Assignment" memorializes the oral agreement to transfer the copyrights to ES, *see* TAC, ECF No. 70 at 8 ¶ 35; and the "Confirmatory Assignment" makes clear that "on or about January 31, 2003, ICC intended to donate and assign and did donate and assign to [NES] . . . all rights, title and interest in and to all of . . . [the works at issue], including the copyrights to and copyright registrations for [the works at issue]," Pl.'s Ex. 2, ECF No. 70-2 at 2. NES later became ES. TAC, ECF No. 70 at 10 ¶¶ 45-46. ES alleges that ICC transferred the copyrighted Legacy Works to

37

NES on January 31, 2003. *Id.* at 8 ¶ 40. The ICC Entities attached a letter with enclosures from the President of ES, John Noose, to the Third Amended Complaint, which states that "[o]n February 1, 2003, ICC-ES assumed control of approximately 1850 evaluation reports, . . . called legacy reports." Pl.'s Ex. 3, ECF No. 70-3 at 71. The IAPMO Entities' argument that the "Confirmatory Assignment" was "belated," Defs.' Partial Mem., ECF No. 77-1 at 2, is unavailing because persuasive authority recognizes that "a prior oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement." *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428 (9th Cir. 1996). And the IAPMO Entities' contention—that the "Confirmatory Assignment" as evidence of an oral agreement "cannot stand alone," Defs.' Partial Mem., ECF No. 77-1 at 13; *see also* Pls.' Resp., ECF No. 178 at 15 n.9—is equally unavailing. The ICC Entities need not provide any evidence at the motion to dismiss stage.

Next, Magistrate Judge Robinson found—and this Court agrees—that the ICC Entities "clearly allege that the Legacy Organizations and ICC intended to assign the Legacy Works to [ES]." R & R, ECF No. 174 at 12; *see also* TAC, ECF No. 70 at 9 ¶ 42, 10 ¶ 44. The IAPMO Entities' argument—that "an oral agreement [to transfer the ICC's copyrights to ES] would have

been entirely inconsistent with the manner in which all other
aspects of the 2003 ICC transfer were handled," Defs.' Objs.,
ECF No. 176 at 14—is improper at this stage without the benefit
of discovery. The Court draws a reasonable inference from the
alleged facts and the documents attached to the operative
complaints that the "board members [of the Legacy Organizations]
in 2003 communicated verbally and orally transferred the Legacy
Works to [ES]." R & R, ECF No. 174 at 12; *see also* TAC, ECF No.
70 at 9-10 ¶¶ 41-43. Contrary to the IAPMO Entities' assertion,
Defs.' Objs., ECF No. 176 at 14, an exact allegation of an oral
agreement or oral transfer is not required at the motion to
dismiss stage, *see, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550
U.S. at 556; *Kowal*, 16 F.3d at 1276. Neither is an allegation
that "a prior agreement or transfer actually took place." Defs.'
Objs., ECF No. 176 at 14. The Court reasonably infers from the
reorganization and consolidation of the Legacy Organizations
that an oral transfer of the copyrights from ICC to ES occurred
at board meetings in 2003. *See* TAC, ECF No. 70 at 8-10 ¶¶ 40-43.[8]

---

[8] Having found that the factual allegations and the documents
attached to the operative complaints support the reasonable
inference that there was an oral agreement to transfer the
copyrights from ICC to ES, the Court agrees with Magistrate
Judge Robinson that there is no disagreement between the
transferor—ICC—and the transferee—ES—about the existence of the
oral transfer of the copyrights. *See* R & R, ECF No. 174 at 13
(collecting cases). The IAPMO Entities' reliance on *Marya v.
Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D. Cal.
2015), is misplaced. *See* Defs.' Objs., ECF No. 176 at 19. In

### 3. The ICC Entities Sufficiently Allege that ICBO Transferred the Copyrighted Legacy Works to ICC

Neither party disputes that the copyright registration certificates for the Serial Publications state that ICBO is the author of the collective works, and that each certificate left blank the section indicating whether the works were being published as contributions. *See* Defs.' Reply, ECF No. 90 at 11; *see also* Pl.-Intervenor's Opp'n, ECF No. 148 at 4. The IAPMO Entities do not challenge that ICBO owned the copyrights in the collective works and that ICBO transferred those copyrights to ICC. *See* Defs.' Mem., ECF No. 145-1 at 8. Rather, the IAPMO Entities facially attack ICC's allegation that the certificates covered all "works made for hire," including the individual Legacy Works. *See id.* at 14; *see also* Defs.' Objs., ECF No. 176 at 15-18.

---

ruling on cross-motions for summary judgment, the court in *Marya* found that the defendants failed to present any evidence of a written or oral transfer. 131 F. Supp. 3d at 1002. The court explained that the defendants were not barred from challenging the existence of the transfer there. *Id*. In this case, however, there is no summary judgment record. The IAPMO Entities will have an opportunity to challenge the transfer after discovery, but such a challenge is improper at the motion to dismiss stage. *Cf. Marya*, 131 F. Supp. 3d at 1002. Accordingly, the Court overrules the IAPMO Entities' objection to Magistrate Judge Robinson's conclusion that the IAPMO Entities lack standing to challenge the "Confirmatory Assignment" at this stage of the proceedings. *See* R & R, ECF No. 174 at 13; *see also* Defs.' Objs., ECF No. 176 at 18-20.

Section 101 of the Copyright Act defines a "work made for hire" as follows:

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101. The first part of this definition "applies to works created by employees," whereas "the second applies to works created by independent contractors." *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 877 (5th Cir. 1997) (citing *Reid*, 490 U.S. at 742-743). In *Reid*, the Supreme Court explained that "[t]he structure of § 101 indicates that a work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors, and ordinary canons of statutory interpretation indicate that the classification of a particular hired party should be made with reference to agency law." *Reid*, 490 U.S. at 742-43.

Here, it is undisputed that ICBO was a "single statutory member" of ICBO-ES. Pl.'s Ex. 3, ECF No. 70-3 at 20. The ICC Entities allege that the Legacy Works within the Serial Publications were "works made for hire" by ICBO-ES for ICBO.

R & R, ECF No. 174 at 17 (citing TAC, ECF No. 70 at 15 ¶ 62;
Pl.'s Ex. 3, ECF No. 70-3 at 20; Pl.-Intervenor's Opp'n, ECF No.
148 at 7-10). According to the IAPMO Entities, ICBO-ES was the
author of the copyrighted Legacy Works (constituent works), and
ICBO-ES retained ownership of those copyrights. *See* Defs.'
Partial Mem., ECF No. 77-1 at 3 (arguing that "[o]wnership of
the individual Legacy Work copyrights would have remained with
the Legacy Works' authors"); *see also* Defs.' Mem., ECF No. 145-1
at 12-15.

Acknowledging that the ICC Entities have yet to support
their allegations with evidence of ICBO's ownership of the
constituent Legacy Works, Magistrate Judge Robinson found that
such evidence is not needed at the motion to dismiss stage, and
that "the relationship between ICBO and ICBO-ES creates a
reasonable inference . . . that the constituent works were made
for hire." R & R, ECF No. 174 at 18. Magistrate Judge Robinson
concluded that "it is plausible that ICBO-ES made the
constituent works for hire as an agent of ICBO, the 'single
statutory member' of ICBO-ES," *id*. at 19 (quoting Pl.'s Ex. 3,
ECF No. 70-3 at 20); and that it is "plausible that [ES] owns
the Legacy Works, which were properly registered and owned by
ICBO," *id*. The Court agrees.

The IAPMO Entities object to the R & R's conclusions,
arguing that the ICC Entities have not alleged that ICBO owned

the copyrights in the constituent works. Defs.' Objs., ECF No. 176 at 15. The IAPMO Entities argue that "the mere fact that ICBO is the 'single statutory member' of ICBO-ES is of no consequence in the determination of whether a work should be considered a 'work for hire.'" *Id.* at 16. The IAPMO Entities contend that Plaintiff-Intervenor's First Amended Complaint contains "no specific pleadings of fact" that "could lead to the inference that ICBO-ES was either an employee or an independent contractor of ICBO." *Id.* at 18. The IAPMO Entities go on to argue that the R & R failed to include a discussion about the relevant factors for an employer-employee relationship. *Id.*

As the ICC Entities correctly point out, Magistrate Judge Robinson's reasoning was consistent with agency law. Pls.' Resp., ECF No. 178 at 13; *see also* R & R, ECF No. 174 at 19. "An agent acting in the same transaction or matter on behalf of more than one principal may be [a subagent, an agent for coprincipals, or both]." Restatement (Third) of Agency § 3.14 (2006); *see also Kelley v. S. Pac. Co.*, 419 U.S. 318, 324 (1974) (a servant "could be deemed to be acting for two masters simultaneously"). According to the ICC Entities, "[u]nder the theory of subagency, ICBO-ES employees who drafted the Legacy Works for the ultimate benefit of ICBO would have been agents of both ICBO-ES and ICBO, and ICBO-ES in directing its employees to do so, would have been an agent of ICBO." Pls.' Resp., ECF No.

178 at 13. The ICC Entities note that "any Evaluation Report or Acceptance Criteria 'authored' by ICBO-ES as an agent of ICBO necessarily was authored by an individual who had an employment or agency relationship with ICBO-ES." *Id.* at 13 n.7. In response, the IAPMO Entities argue that "this Court need not delve into the nuances of agency and sub-agency law because the complaints at issue only contain legal conclusions and rely on generalizations, inferences and assumptions." Defs.' Reply, ECF No. 179 at 5.

The ICC Entities need only plead sufficient facts to give rise to an inference that an agency relationship existed. *Cf. Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1097 (D.C. 2008) ("The existence of an agency relationship is a question of fact, for which the person asserting the relationship has the burden of proof."). The ICC Entities have done so. ICC alleges that: (1) ICBO and ICBO-ES regularly published the Serial Publications from at least 1977; (2) ICBO owned the copyrights in the Serial Publications and the constituent works; (3) ICBO was the author and owner of the constituent works within the Serial Publications; and (4) each constituent work was created as a work made for hire by ICBO-ES on behalf of ICBO. Pl.-Intervenor's FAC, ECF No. 138 at 10-11 ¶¶ 48-51. ICBO was established in 1958, Pl.'s Ex. 3, ECF No. 70-3 at 17; and ICBO-ES did not exist before 1985, Pl.-Intervenor's Opp'n, ECF No.

44

148 at 9. There is no dispute that each copyright registration certificate shows that ICBO, rather than ICBO-ES, registered the Serial Publications as the author and claimant, and ICBO continued to register those works without identifying ICBO-ES until 2001. *See id*. According to the "Information Statement," "ICBO-ES has a single statutory member: ICBO." Pl.'s Ex. 3, ECF No. 70-3 at 20.

Contrary to the IAPMO Entities' contentions, *see* Defs.' Reply, ECF No. 179 at 5, the Court can draw a reasonable inference based on the alleged facts and the documents attached to Plaintiff-Intervenor's First Amended Complaint that the authors of the copyrighted Legacy Works were employees of both ICBO-ES and ICBO, and that there was an agency relationship between ICBO and ICBO-ES, *see Kowal*, 16 F.3d at 1276. The Court therefore finds that it is plausible that ES is the owner of the Legacy Works as a result of the ICBO-to-ICC and ICC-to-ES transfers based on the inference that the Legacy Works were "works made for hire" by ICBO-ES for ICBO.[9]

---

[9] One of the IAPMO Entities' two remaining arguments—that Plaintiff-Intervenor's FAC rather than Plaintiff's TAC alleges a "works made for hire" theory, Defs.' Objs., ECF No. 176 at 17—is unavailing because the IAPMO Entities cite no authority that prohibits a plaintiff-intervenor from asserting alternative theories to protect its claimed interest in the property at issue in a case. The Court will not consider the IAPMO Entities' next argument—that the ICC Entities fail to cite any authority indicating that a limited liability company ("LLC") could be an agent of the LLC's sole statutory member for purposes of the

### 4. The ICC Entities Sufficiently Allege that the Copyright Registration Certificates for the Serial Publications Cover the Individual Legacy Works

Finally, the Court considers the IAPMO Entities' objection to Magistrate Judge Robinson's conclusion that the ICC Entities "have exceeded what this [C]ourt has previously found sufficient" with respect to the copyright registration certificates for the Legacy Works contained within the Serial Publications. R & R, ECF No. 174 at 20; *see also* Defs.' Objs., ECF No. 176 at 20-23. According to the IAPMO Entities, Magistrate Judge Robinson "incorrectly concluded that in these circumstances the applicable collective work registrations could serve to effectively register the underlying constituent works as well." Defs.' Objs., ECF No. 176 at 21. The ICC Entities disagree, arguing that Magistrate Judge Robinson properly concluded that the ICC Entities sufficiently allege ownership and registration of the constituent works, the Legacy Works, given that the "collective work registration can simultaneously register constituent works." Pls.' Resp., ECF No. 178 at 19 (quoting R & R, ECF No. 174 at 16). The ICC Entities contend that federal law, the Federal Rules of Civil Procedure, and this

---

"works made for hire" doctrine, Defs.' Reply, ECF No. 179 at 6-7—because it was not presented to Magistrate Judge Robinson. *See M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 37 (D.D.C. 2013) (explaining that "parties may not present new issues or arguments to the district judge").

Court require nothing more than factual allegations that the copyrights to the Legacy Works were registered with the U.S. Copyright Office along with the collective copyright registrations. *Id.* at 17-18. For the reasons articulated below, the Court agrees.

In denying the IAPMO Entities' motion to dismiss the copyright infringement claim in the First Amended Complaint, this Court relied on the four elements set forth in *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181 (D.D.C. 2005): "(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright." *ICC Evaluation Serv., LLC*, 2016 U.S. Dist. LEXIS 153518, at *5 (quoting *Newborn*, 391 F. Supp. 2d at 186). A plaintiff must plead these four elements to survive a motion to dismiss. *Id.* Here, the IAPMO Entities challenge the third *Newborn* element. Defs.' Objs., ECF No. 176 at 21.

As noted in the R & R, the third *Newborn* element "can be ambiguous when applied to collective works." R & R, ECF No. 174 at 15. "Section 409 of the Copyright Act provides that an application for registration of a compilation 'shall be made on a form prescribed by the Register of Copyrights and shall

include,' as relevant here, the name of the author or authors, the title of the work, and 'an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered.'" *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network*, *Inc.*, 722 F.3d 591, 597 (4th Cir. 2013) (quoting 17 U.S.C. § 409). "As applied to a collective work whose author has also acquired the copyrights in individual component works, the text of Section 409 is ambiguous at best." *Id.* Courts addressing this issue have looked to guidance from the U.S. Copyright Office. *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 679, 685 (9th Cir. 2014).

"Since 1980, the [U.S.] Copyright Office has permitted, as a matter of practice, copyright registrations of collective works to cover underlying contributions where the rights in those contributions belong to the claimant even though the individual contributors are not named in the registration form." *Id.* (citation omitted). The U.S. Copyright Office encourages, but does not require, applicants to provide a list of all the contributors to a collective work, R & R, ECF No. 174 at 15 (citing U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 613.10(F) (3d ed. 2014) [hereinafter "Compendium III"]); and the U.S. Copyright Office "only requires

48

information related to the collective work to register the underlying, constituent works if all belong to the same registrant," *id.* (citing 17 U.S.C. § 408(c)(1); Compendium III § 613.10(F)).

In *Alaska Stock, LLC*, the United States Court of Appeals for the Ninth Circuit held that the plaintiff "successfully registered the copyright both to its collections and to the individual images contained therein" because "[t]he statute required identification of the author and title of the 'work,' which was the collective work, and extended registration to the component parts if the party registering the collective work owned the copyright to the component parts, as [the plaintiff] did." 747 F.3d at 685; *see also Metro. Reg'l Info. Sys., Inc.*, 722 F.3d at 598 (recognizing that registrations of collective works are "sufficient to permit an infringement action on behalf of component works, at least so long as the registrant owns the rights to the component works as well").

Relying on *Alaska Stock, LLC*, 747 F.3d at 685, and *Metropolitan Regional Information Systems, Inc.*, 722 F.3d at 598-99, Magistrate Judge Robinson found that the ICC Entities sufficiently allege that they registered both the collective and constituent works. R & R, ECF No. 174 at 16-17. The IAPMO Entities do not address or attempt to distinguish *Alaska Stock, LLC* or *Metropolitan Regional Information Systems, Inc. See,*

*e.g.*, Defs.' Objs., ECF No. 176 at 1-23; Defs.' Reply, ECF No. 179 at 1-10. Rather, the IAPMO Entities argue that the ICC Entities' allegation that the Legacy Works were registered is a "bare allegation." Defs.' Reply, ECF No. 179 at 9. ES asserts—and this Court agrees—that "[a] copyright claimant of a collective work who also owns the constituent works within the collection may bring infringement claims based on that registration for infringement of the collective work, a particular work within the collection, or both." Pl.'s Opp'n, ECF No. 83 at 21-22 (citing *Alaska Stock, LLC*, 747 F.3d at 685; *Metro. Reg'l Info. Sys., Inc.*, 722 F.3d at 598).

The ICC Entities allege sufficient facts to satisfy the third *Newborn* element—the ICC Entities must plead that the copyrights have been registered in accordance with the Copyright Act—to survive the IAPMO Entities' motions to dismiss. *See Newborn*, 391 F. Supp. 2d at 186. It is undisputed that the copyright registration certificates for the Serial Publications are "collective works." *See* Defs.' Reply, ECF No. 179 at 9. The IAPMO Entities acknowledge that "the complaints in question allege that the Legacy Works were registered." Defs.' Objs., ECF No. 176 at 21 n.8. The IAPMO Entities argue—and the Court disagrees—that the ICC Entities fail to allege "any facts" for this Court to conclude that the Legacy Works were included as part of the documents contained in the registered Serial

Publications. *Id.* at 21. According to the ICC Entities, ICBO registered the Serial Publications as collective works with the Copyright Office, and the Legacy Works were registered as part of those collective works. *See* TAC, ECF No. 70 at 18 ¶¶ 79-80, 19 ¶¶ 85-86, 23 ¶ 107, 24 ¶¶ 112-15, 25 ¶¶ 120-21, 29 ¶ 142, 30 ¶¶ 148-49, 32 ¶¶ 159-60; *see also* Pl.-Intervenor's FAC, ECF No. 138 at 18 ¶¶ 84-85, 19-20 ¶ 89, 20 ¶¶ 90, 94, 21 ¶ 98, 22 ¶¶ 99-101, 23-24 ¶¶ 105-106, 24 ¶ 110, 25-26 ¶¶ 115-16, 26 ¶ 120, 27 ¶ 121.

For example, the ICC Entities allege that "[e]ffective January 22, 1991, ICBO registered with the Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3899 (issued August 1990), under copyright registration number TX 2-998-540." TAC, ECF No. 70 at 19 ¶ 85; *see also* Pl.-Intervenor's FAC, ECF No. 138 at 19-20 ¶ 89. And the ICC Entities attached the corresponding exhibit, which contains the copyright registration for Volume XII of "Evaluation Reports" with the date of first publication on October 26, 1990. *E.g.*, Pl.'s Ex. 21, ECF No. 70-21 at 2-4; Pl.-Intervenor's Ex. 18, ECF No. 138-18 at 2-4. As such, the ICC Entities allege that ICBO-ES Evaluation Report No. ER-3899, which was issued in August 1990, was contained in the twelfth volume of the "Evaluation Reports" Serial Publication, and that Serial Publication was registered under copyright registration number TX 2-998-540. *See* Pls.' Resp., ECF No. 178

at 18. The ICC Entities assert similar factual allegations for each Legacy Work and attach the corresponding copyright registration certificate as an exhibit. The Court therefore finds that it is plausible that the constituent Legacy Works were registered as part of the registrations for the Serial Publications (collective works). *See, e.g.*, *Alaska Stock, LLC*, 747 F.3d at 685; *Metro. Reg'l Info. Sys., Inc.*, 722 F.3d at 598.

*    *    *

The Court concludes that the ICC Entities have sufficiently pled the *Newborn* elements, and plausibly stated claims for copyright infringement. Accordingly, the Court **DENIES** the IAPMO Entities' Rule 12(b)(6) motions.

### V. Conclusion

For the reasons set forth above, the Court **ADOPTS** the R & R in its entirety, and **DENIES** the IAPMO Entities' motions to dismiss Plaintiff's Third Amended Complaint and Plaintiff-Intervenor's First Amended Complaint. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**April 17, 2020**