UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ICC EVALUATION SERVICE, LLC,** <br><br> Plaintiff, <br><br> & <br><br> **INTERNATIONAL CODE COUNCIL, INC.,** <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> **INTERNATIONAL ASSOCIATION OF PLUMBING AND MECHANICAL OFFICIALS, INC.,** *et al.*, <br><br> Defendants. | No. 1:16-cv-00054-EGS-ZMF |

## MEMORANDUM OPINION

Plaintiff ICC Evaluation Service, LLC ("ICC-ES") and Plaintiff-Intervenor International Code Council, Inc. ("ICC") (together, "Plaintiffs") bring this action against Defendants International Association of Plumbing and Mechanical Officials, Inc. ("IAPMO") and IAPMO Evaluation Service, LLC ("IAPMO-ES") (together, "Defendants") for copyright infringement, in violation of 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). On April 27, 2022, after consideration of the parties' cross motions for summary judgment, the undersigned issued a Report and Recommendation. *See* Report and Recommendation ("R&R"), ECF No. 229. Pending for consideration by the Court are Defendants' proposed redactions to the Report and Recommendation ("Proposed Redactions"), *see* Proposed Redactions, ECF No. 246-4; Defs.' Mem. in Support of Proposed Redactions ("Defs.' Mem."), ECF No. 246-5, Plaintiffs' proposed unsealing of the Report and Recommendation, *see* Pls.' Br. Opposing Proposed Redactions ("Pls.'

1

Mem."), ECF No. 247, and the accompanying responsive briefs. For the reasons below, the Court will order that the Report and Recommendation be unsealed and published without redaction.[1]

## I. BACKGROUND

### A. Protective Order

On December 22, 2016, the parties agreed to, and this Court issued, a protective order pursuant to Federal Rule of Civil Procedure 26(c). *See* Protective Order, ECF No. 38; Minute Order (Dec. 27, 2016). Under its terms, a party can designate material as "confidential" if it is "proprietary to the disclosing party, is used in its business, and has not been made public." Protective Order ¶ 1(a). A party can designate material as "highly confidential" if it is:

> material that consists of or contains personal, technical, scientific, business or financial information, including – without limitation – trade secrets, sales, marketing, business strategy and planning information, and commercial and financial information, which (i) has not been made public; (ii) that is proprietary or otherwise sensitive; and (iii) is of such nature that disclosure to the opposing party could cause substantial harm to the disclosing party.

*Id.* ¶ 1(b). While confidential information may be shared with employees or officers of a party, highly confidential information may not. *See id.* ¶ 1(f)(ii). Both confidential and highly confidential material may only be shared within the bounds of litigation. *See id.* ¶ 1(e). After one party designates information as confidential or highly confidential, the opposing party can challenge that designation. *See id.* ¶ 4. The burden of proof remains with the party asserting confidentiality. *See id.*

---

[1] The Court, however, will permit the Defendants' exhibit which highlighted their Proposed Redactions, ECF No. 246-4, to remain under seal. "[H]ighlighting [Defendants'] proposed redactions for the public would increase the potential embarrassment for [Defendants] without enhancing public access to the Court's opinion." *In re McCormick & Co., Inc.*, No. 15-mc-1825, 2017 WL 2560911, at *3 n.1 (D.D.C. June 13, 2017).

B.     Nullification of Defendants' Confidentiality Designations

On December 18, 2018, Plaintiff ICC-ES[2] moved to nullify certain confidentiality designations by Defendants as improper. *See* Pl.'s Mot. to Nullify, ECF No. 109. The designations concerned the deposition testimony of six witnesses, including IAMPO's 30(b)(6) designee.[3] *Id.* at 1. The testimony was about how "IAPMO-ES acquired and stored the information, who ha[d] access to the information, and which ICC-ES files IAPMO-ES acquired." Nullification Order at 4, ECF No. 175. Defendants argued that the testimony was "proprietary" under the Protective Order because it relayed IAPMO-ES's drafting process. *See* Defs.' Opp. at 9, ECF No. 120. Defendants further claimed that the information was "sensitive" because it related to the internal business practices of IAPMO-ES and stood to harm its "integrity." *See id.* at 11–12. Plaintiff responded that evidence of IAPMO-ES using Plaintiff's own work could not be considered "proprietary" to Defendants. *See* Pl.'s Mot. to Nullify at 14.

On November 25, 2019, Judge Robinson granted Plaintiff ICC-ES's motion to nullify Defendants' confidentiality designations, finding that: (i) the information was "not sufficiently 'novel' to be considered proprietary," Nullification Order at 16–17 (citing *John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986)); (ii) while the information about IAPMO-ES's drafting process *could* be proprietary, Defendants "ma[de] no effort to demonstrate that the use of servers to store and access this information [wa]s anything other than a common business practice instead

---

[2] At the time Plaintiff ICC-ES filed its motion, ICC had not yet been added as Plaintiff-Intervenor. On May 24, 2019, Magistrate Judge Robinson granted ICC's motion to intervene as Plaintiff-Intervenor. *See* ECF No. 117.

[3] Plaintiff asserted that designations as to the following deposition testimony were improper: Richard Beck (159:5–171:9; 180:19–187:13); Brian Gerber (124:10–129:5); Rafael Donado (48:18–54:10); Ohannes Dembekjian (226:19–227:4); IAPMO 30(b)(6) through its designee Gabriella Davis (126:21–128:15); and Russ Chaney (68:4–23; 137:22–138:18; 143:21–144:8). *See* Pl.'s Mot. to Nullify at 1.

of a unique, protectable process," *id.* at 14; and (iii) the allegations of harm were merely speculative because Defendants failed to establish a "defined and serious injury" in the form of financial harm supported by a "specific demonstration of facts," *id.* at 15 (quoting *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998); *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006)).

  C. Report and Recommendation

On October 16, 2020, the parties cross-filed motions for summary judgment on the merits. *See* ECF Nos. 199, 200.  On April 27, 2022, the undersigned issued a report and recommendation that recommended granting in part and denying in part Plaintiffs' motion and denying Defendants' motion.  *See* R&R at 1.  On May 4, 2022, Defendants moved to seal the Report and Recommendation.  *See* Defs.' Mot. to Seal, ECF No. 231.  On May 5, 2022, the undersigned granted the motion to seal to allow the parties to submit proposed redactions.  *See* Sealing Order, ECF No. 232.  On May 20, 2022, Defendants filed a memorandum in support of their Proposed Redactions, *see* Defs.' Mem., and Plaintiffs filed a brief opposing all redactions, *see* Pls.' Mem. On June 3, 2022, Defendants filed a supplemental opposition to Plaintiffs' brief.  *See* Defs.' Supplement Opposition, ECF No. 256.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows courts to enter protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  A court will enter a protective order only if the party seeking protection demonstrates "good cause." *Id.*

The mere fact that material may be subject to a protective order limiting disclosure does not, however, mean that it must *remain* shielded from public disclosure.  *See McCormick*, 2017

4

WL 2560911, at *1. And "approval of the Protective Order . . . does not mean that references to protected information and documents in a judicial opinion must be redacted." *Doe v. Exxon Mobil Corp.*, 570 F. Supp. 2d 49, 52 (D.D.C. 2008). Yet "a party's reliance on a protective order is a significant factor in determining whether to lift a seal on discovery materials." *Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 659 (D.D.C. 1986).

The D.C. Circuit has established a six-factor test for determining whether to redact or seal court records:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*EEOC v. Nat'l Children's Ctr. Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). After considering these six factors, "a court may only place or keep judicial records under seal if it 'concludes that justice so requires.'" *Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 52 (D.D.C. 2021) (quoting *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017)). The burden is on the party seeking to restrict disclosure "to come forward with specific reasons why the record, or any part thereof, should remain under seal." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991).

### III.  ANALYSIS

Defendants seek to redact thirteen portions of the Report and Recommendation. *See* Proposed Redactions. The redactions primarily relate to Defendants' general business practices, including the acquisition, copying, and storage of documents. *See id.* at Redaction #1–3, 7–13. The redactions also include information about Defendants' revision and replacement of certain

reports from their website in response to Plaintiffs' allegations of infringement. *See id.* at Redaction #4–6.

The undersigned first considers whether the Protective Order applies to Defendants' Proposed Redactions, and then whether Defendants' Proposed Redactions ought to remain sealed.

A.   Protective Order

1.   *Confidential*

To warrant a "confidential" designation under the Protective Order, Defendants must show that the material was "proprietary to the disclosing party, [was] used in its business, and [had] not been made public."  Protective Order ¶ 1(a).

a.   The Information Is Not Proprietary

Proprietary information is defined as "[i]nformation in which the owner has a protectable interest." Proprietary Information, Black's Law Dictionary (11th ed. 2019). Courts will not protect information that is "not novel and probably already known, or could be reconstructed, by those familiar with the field." *Yogi*, 110 F.R.D. at 633 (quoting *Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001, 1008 (3d Cir. 1976)).

One recognized category of proprietary information is trade secrets. *See id.* at 632. "A trade secret may consist of any formula, pattern, device, or compilation of information used in one's business, and which give him an opportunity to obtain an advantage over competitors, who do not know or use it." Restatement (First) of Torts § 757 cmt. b (Am. L. Inst. 1939). Additionally, "information is not a trade secret as a matter of law if it is 'easily ascertainable by the public or generally known within an industry.'" *Meyer Grp., Ltd. v. Rayborn*, No. 19-cv-1945, 2020 WL 5763631, at *4 (D.D.C. Sept. 28, 2020) (quoting *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 232–33 (D.D.C. 2016)).

Defendant argues that the Proposed Redactions contain "sensitive business information and trade secrets, specifically Defendants' internal processes and financial records." Defs.' Mem. at 2. Defendants again "make no effort to demonstrate" that their process of obtaining and storing documents was "anything other than a common business practice instead of a unique, protectable process." Nullification Order at 14 (citing *Yogi*, 110 F.R.D. at 633). Further, despite Defendants' statement, the Report and Recommendation contains no financial records nor do Defendants seek to redact any. *See* Defs.' Mem. at 3. This Court must again reject Defendants' argument as "conclusory." Nullification Order at 14; *see also Alexander*, 186 F.R.D. at 75.

Moreover, Defendants' Proposed Redactions include the use of documents created by their direct competitor: Plaintiffs. "Deceptive, illegal or fraudulent activity simply cannot qualify for protection as a trade secret." *Goodman v. Genworth Fin. Wealth Mgmt.*, 881 F. Supp. 2d 347, 355 (E.D.N.Y. 2012) (citing Restatement (Third) of Unfair Competition § 40 cmt. c (Am. L. Inst. 1995)). Therefore, evidence of Defendants' impermissible copying and storing Plaintiffs' work—the central copyright infringement allegations in this case—are not the type of business practices in which Defendants have a proprietary interest.

        b.      The Business Information Has Been Made Public

Judge Robinson's order "made public" summaries of much of the information contained in Defendants' Proposed Redactions.[4] This information has been publicly available for more than

---

[4] E.g., Defendants seek to redact citations to the testimony of Mr. Donado (47:23–54:6) at 9 of the Report and Recommendation. However, Judge Robinson already held that 48:18–54:10 of Mr. Donado's testimony was neither confidential nor highly confidential, *see* Nullification Order at 4, 21. Defendants also seek to redact the testimony of Mr. Beck 164:3–5 at 9 of the Report and Recommendation. Again, Judge Robinson already held that 162:10–171:9 of Mr. Beck's testimony was not protected information. *See id.*

Judge Robinson's order also publicly revealed information contained in other Proposed Redactions, *see* Proposed Redactions, Redaction #1, 2, 3, 7, 8, including that (i) Michael Merrigan "discussed copying ICC-ES evaluation reports" in his deposition, Nullification Order at 11;

thirty months—and remains so to this day.[5]  *See, e.g.*, Nullification Order at 4–5, 11, 13–14.  This public information is not protectible.  *See* Protective Order ¶ 1(a); *Yogi*, 110 F.R.D. at 633.

    2.    *Highly Confidential*

To support a "highly confidential" designation, Defendants must make a showing that the material "consists of or contains personal, technical, scientific, business or financial information. . . which (i) has not been made public; (ii) that is proprietary or otherwise sensitive; and (iii) is of such nature that disclosure to the opposing party could cause substantial harm to the disclosing party."  Protective Order ¶ 1(b).

    a.    The Information Is Already Public and Not Proprietary

For the reasons set forth above, the information contained in Defendants' Proposed Redactions has substantially been made public and is not proprietary.

    b.    The Information Is Not Sensitive or of Such Nature that Disclosure Could Cause Substantial Harm

Good cause to protect a document from disclosure "is only established when the movant demonstrates that disclosure would cause a clearly defined and serious injury," i.e., substantial harm.[6]  *Estate of Gaither ex rel. Gaither v. District of Columbia*, No. 03-cv-1458, 2008 WL

---

(ii) "IAPMO-ES downloaded ICC-ES acceptance criteria and 'put them in a file,'" *id.* at 4; (iii) deponents identified "the means by which IAPMO-ES acquired and stored the information, who has access to the information, and which ICC-ES files IAPMO-ES acquired," *id.*; (iv) Plaintiff's property "found [its] way to Defendants' property, which include[d] their servers and ultimately Defendants' drafting process," *id.* at 13; (v) IAPMO-ES "stored copies of ICC publications on a 'shared directory,' which included at least 200 acceptance criteria," *id.*; and (vi) ICC's publications existed on "something called 'laser fische,'" *id.* at 13–14.

[5] On April 27, 2022, this Court issued the Report and Recommendation publicly in its entirety on the docket.  Seven days later, Defendants filed a motion to seal.  *See* ECF No. 231.  Despite Defendants' delay, the Court does not assign significant weight to this period of public availability given its subsequent sealing order.

[6] "[I]f the information could cause substantial harm, it is sensitive."  Nullification Order at 14.  Thus, the sensitivity of information overlaps with its potential to "cause substantial harm to the disclosing party."  Protective Order ¶ 1(b)(iii).

11391400, at *2 (D.D.C. Apr. 30, 2008) (quoting *Univ. of Mass.*, 437 F. Supp. 2d at 60). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

Defendants argue generally that the Proposed Redactions "contain sensitive business information and trade secrets," Defs.' Mem. at 2, but did not identify *any* clearly defined or serious injury that: (1) they suffered either during the week that the Report and Recommendation was publicly available or during the more than thirty months that Judge Robinson's Order has been public; or (2) they would suffer if the Court unsealed and republished the Report and Recommendation.

Even if Defendants' conclusory statement implied a generalized reputational or financial harm from loss of business, this would still be insufficient. "Simply showing that the information would harm [a] company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). This is especially true where, as here, the proposed redactions concern business practices at the heart of the claims in an action:

> The potential harm asserted by the corporate defendants is in disclosure of poor management in the past. That is hardly a trade secret. The argument that disclosure of poor management is so harmful as to justify keeping the Report under seal proves too much since it is a claim which grows stronger with the degree of misconduct.

*Joy v. North*, 692 F.2d 880, 894, 895 (2d Cir. 1982). "[A] naked conclusory statement that publication of the [Proposed Redactions] will injure the [company] in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal." *Id.* at 894. "[T]he purpose of entering a protective order is

9

not to insulate a party from the annoyance, embarrassment, oppression, or burden that may be caused by having to defend claims of wrongdoing." *Ameriprise Fin. Servs., Inc. v. Rsrv. Fund*, No. 08-cv-5219, 2008 WL 11456114, at *3 (D. Minn. Dec. 15, 2008).  Defendants have not demonstrated that disclosure could cause substantial harm of the sort implicated by the Protective Order or Rule 26(c).

For the foregoing reasons, Defendants have failed to establish that the information contained in the Proposed Redactions is either "confidential" or "highly confidential" under the Protective Order, and so is not entitled to protection on that basis.  Indeed, this is consistent with Judge Robinson's order nullifying Defendants' confidentiality designations regarding very similar information.  *See* Nullification Order at 12–17.  In light of the nullification order, any continued reliance by Defendants on the Protective Order for the protection of similar—and in some instances the same—information here is unreasonable and not "a significant factor in determining whether to lift a seal on discovery materials." *Tavoulareas*, 111 F.R.D. at 659 (citations omitted).

B.    Sealing

"[T]he starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings.'" *Nat'l Children's Ctr.*, 98 F.3d at 1409 (quoting *Johnson*, 951 F.2d at 1277).  This presumption may be overcome based on the consideration of six factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Id.*

1. *The Need for Public Access*

"The right of public access is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife*, 865 F.3d at 663. Accordingly, "[i]t is not the [party seeking unsealing's] burden to proffer a need for public access; the burden is instead the respondent's to demonstrate the *absence* of a need for public access because the law presumes that the public is entitled to access the contents of judicial proceedings." *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 140–41 (D.D.C. 2012) (citing *United States v. Hubbard*, 650 F.2d 293, 314–15 (D.C. Cir. 1980)). Defendants' naked assertion that "there is no need for public access," Defs.' Mem. at 3, without more, is insufficient to meet that burden. *See United States v. Thomas*, 840 F. Supp. 2d 1, 4 (D.D.C. 2011) (finding defendant's "conclusory assertion" that "there is no need for public access" to be "unavailing").

2. *The Extent of Previous Public Access*

Public access to even the "general nature of the statements" is sufficient to support a finding that the materials should not remain under seal. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 94 (D.D.C. 2014). Here, the general nature of the statements underlying Defendants' Proposed Redactions have been publicly accessible for more than thirty months—and continue to be publicly accessible—in the form of deposition testimony summaries contained in Judge Robinson's order to nullify confidentiality designations. *See supra* at 7–8. The previous public access to this information thus weighs in favor of unsealing. *See Hubbard*, 650 F.2d at 318.

3. *Objections to Disclosure*

"The Court must also take into account 'the fact that someone has objected to disclosure, and the identity of that person.'" *Hamen v. Islamic Republic of Iran*, 318 F. Supp. 3d 194, 198

(D.D.C. 2018) (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409). "[W]here, as here, the only party to object is the defendant, courts in this district have concluded that this factor weighs in favor of disclosure." *United States v. Munchel*, No. 21-cr-118, 2021 WL 4709745, at *6 (D.D.C. Oct. 8, 2021) (citing *United States v. Jackson*, No. 21-mj-115, 2021 WL 1026127, at *7 (D.D.C. Mar. 17, 2021); *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-78, 2021 WL 2711706, at *5 (D.D.C. June 30, 2021)). This factor tends to favor sealing when a third party is lodging the objection to disclosure. *See ISS Marine Servs.*, 905 F. Supp. 2d at 141 (citing *Hubbard*, 650 F.2d at 319). Given the lack of third-party objection, this factor favors disclosure.

    4.    *The Property and Privacy Interests Asserted*

"[U]nder this factor, the party seeking to avoid disclosure must identify specific privacy interests in the documents at issue." *Guttenberg*, 26 F. Supp. 3d at 94. "Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. If documents contain sensitive business information and trade secrets, however, "those factors often weigh in favor of sealing." *MetLife*, 865 F.3d at 671.

Defendants' sole argument is that the redacted information "contain[s] sensitive business information and trade secrets, specifically Defendants' internal processes and financial records." Defs.' Mem. at 2. For the reasons stated above, Defendants' argument fails. *See supra* at 6–10. This factor thus weighs in favor of disclosure.

    5.    *The Possibility of Prejudice from Disclosure*

"'[V]ague assertions' of prejudice do not convince the Court that the disputed documents should be sealed." *Grynberg v. BP P.L.C.*, 205 F. Supp. 3d 1, 4 (D.D.C. 2016) (quoting *Am. Pro.*

12

*Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 25 (D.D.C. 2013)).  Again, Defendants assert nothing more than that the redacted information "contain[s] sensitive business information and trade secrets,"  Defs.' Mem. at 2.  These "amorphous claim[s]" regarding "nondescript property and reputational interests are not substantial and do not weigh in favor of sealing."  *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 150 (D.D.C. 2010).

6. *The Purposes for Which the Documents Were Introduced*

"[T]he interest in disclosure is especially strong for documents relevant 'to the central claims of the litigation.'"  *Vanda Pharms.*, 539 F. Supp. 3d at 57 (quoting *Guttenberg*, 26 F. Supp. 3d at 96).  And "[w]hen a sealed document is considered as part of judicial decisionmaking [sic], the sixth factor will oftentimes carry great weight."  *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 120 (D.C. Cir. 2021).  Indeed, redactions are disfavored where "[t]he information [a party] seek[s] to shield from the public is critical to the analysis in the [court's] opinion."  *Exxon Mobil*, 570 F. Supp. 2d at 53.  The information Defendants seek to redact is central to both the copyright infringement claims in this case and to the conclusions reached in the Report and Recommendation.  The undersigned's recommendation necessarily cited to the documents relied upon by the parties in moving for summary judgment.  And "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons."  *Joy*, 692 F.2d at 893.  Thus, this factor too weighs in favors of disclosure.

Because the factors favor disclosure, the undersigned concludes that justice does not require any redaction of the Report and Recommendation.  *See Metlife*, 865 F.3d at 666.

## IV. CONCLUSION

For the reasons stated above, the Court will reject Defendants' Proposed Redactions and order that the Report and Recommendation, ECF No. 229, be unsealed and published without redaction.

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE